675 A.2d 131

John LEBAC

v.

Theresa LEBAC.

No. 1070, Sept. Term, 1995.

Court of Special Appeals of Maryland.

April 2, 1996.

Reconsideration Denied May 28, 1996.

Richard D. Albright, Washington, DC, for Appellant.

Jo Benson Fogel, Rockville, MD, for Appellee.

Argued before BLOOM, WENNER and HOLLANDER, JJ.

WENNER, Judge.

John Lebac appeals from a judgment the Circuit Court for Montgomery Court entered in favor of appellee, Theresa Lebac. On appeal, he seeks our review of the following questions, which we have reordered and rephrased as follows:

(1) Did the trial court err by (a) dismissing appellant's exceptions for failing to comply with Rule 2–541; and (b) by failing to vacate its order dismissing appellant's exceptions?

(2) Did the trial court err in concluding that appellant was receiving retirement benefits, rather than workers' compensation and/or disability benefits?

(3) Did the trial court err by awarding attorney's fees to appellee?

We shall answer the first two questions in the negative, and affirm that portion of the judgment of the circuit court. On the other hand, we shall answer the third question in the affirmative, and remand that portion of the case to the circuit court for further proceedings.

## Facts

The parties had been married for fifteen years when their marriage was ended by a Judgment of Absolute Divorce granted on 26 November 1986, and their separation agreement was enrolled in the Judgment of Divorce. The separation agreement provided in pertinent part:

[W]hen and if the defendant John Lebac, Jr. shall be entitled to receive retirement benefits from his U.S. Secret

Service employment, the plaintiff, Theresa Lebac, as alternative payee, as and for marital property, shall receive a sum equal to twenty percent (20%) of any payment received by John Lebac, Jr. as a result of his employment by the U.S. Secret Service Uniformed Division, District of Columbia Police and Fire Fighters Retirement System.

On 21 June 1991, appellant retired from the United States Secret Service Uniformed Division under provisions of the District of Columbia's Police and Firefighters' Retirement and Disability Act (the D.C. Act). After appellant failed to provide appellee with twenty per cent of his monthly retirement income, she sought entry of a modified order for payment of marital interest in appellant's retirement benefits, an accounting, and entry of a judgment for arrearages.

Testimony was taken before a domestic relations master on 6 January 1995. The master filed her findings of fact and recommendations on 22 February 1995, providing the parties with a copy.

Although appellant noted exceptions, he failed to furnish the circuit court with a "transcript of so much of the testimony as necessary to rule on the exceptions." [1] Accordingly, the circuit court denied appellant's exceptions and adopted the master's recommendations. Appellant then noted this appeal. We shall include such additional facts as may be necessary to our discussion.

## Discussion

### I.

■ Appellant first contends that "through a misinterpretation of the [Md.Rules], the transcript was not promptly ordered by appellant's counsel and was not filed within the 30 days[.]" Md.Rule 2–541(h)(2) requires in pertinent part that:

... a party who has filed exceptions shall cause to be prepared and transmitted to the court a transcript of so much of the testimony as is necessary to rule on the

1. Md.Rule 2–541(h)(2).

exceptions. The transcript shall be ordered at the time the exceptions are filed, and the transcript shall be filed within 30 days thereafter or within such longer time, not exceeding 60 days after the exceptions are filed, as the master may allow. The court may further extend the time for the filing of the transcript for good cause shown. * * * *The court may dismiss the exceptions of a party who has not complied with this section.* (Emphasis added).

Appellant freely admits that he failed to comply with Md.Rule 2–541(h)(2), but claims a transcript was not necessary as there are no disputed facts.[2] Thus, appellant contends that a transcript would not have assisted the trial court in reaching its conclusions, as it already had before it all of the parties' pleadings and exhibits.

■ We have often pointed out that we are neither obliged nor inclined to rummage through the record seeking support for a party's position, *see e.g. Hamilos v. Hamilos,* 52 Md.App. 488, 497 n. 3, 450 A.2d 1316 (1982). Nor is a circuit court when called upon to deal with appellant's exceptions. Rule S74A requires an asserted error to be set forth with particularity. Otherwise, an exception "... is waived unless the court finds that justice requires otherwise." In any event, we fail to see how exceptions can be properly considered without a transcript.

Ironically, not until *after* the trial court had denied his exceptions and adopted the master's recommendations did appellant inform the trial court why he had failed to file a transcript. It was only then that appellant filed a motion to alter or amend the judgment, which was denied.

In view of appellant's utter failure to comply with Rule S74A, we are unable to find that the trial court abused its discretion in denying appellant's exceptions and adopting the

---

**2.** In the proceedings below and at oral argument, appellant maintained that a transcript was not filed because a fellow secret service officer had died unexpectedly. Interestingly, appellant fails to explain why he had no difficulty filing the exceptions during the same period, or why after a period of 30 days had passed, an extension was not requested.

master's recommendations, or by denying appellant's motion to alter or amend. Nonetheless, we shall exercise the discretion bestowed upon us by Rule 8–131(a)[3] and consider appellant's issues.

## II.

■ Before doing so, we shall review the circumstances surrounding appellant's disability retirement. By an order of 24 June 1991, captioned DISABILITY RETIREMENT, appellant retired at the close of business 21 June 1991 on a surgical disability incurred during his service as a K–9 officer with the United States Secret Service Uniformed Division, under the provisions of § 4–616(a) of the D.C.Act.[4]

Appellant principally contends that his disability benefits are in the nature of workers' compensation. As they have been received after the termination of his marriage, appellant feels they are not subject to equitable distribution. Although appellant relies on *Queen v. Queen*, 308 Md. 574, 521 A.2d 320 (1987),[5] we believe his reliance on *Queen* is misplaced.

---

3. Md.Rule 8–131. SCOPE OF REVIEW

    (a) **Generally.**— The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issues if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

4. The Order was issued by the Police and Firefighters Retirement and Relief Board.

5. In *Queen*, the Court of Appeals held that
    only that portion of the husband's award compensating for loss of earning capacity during the marriage is marital property subject to equitable distribution by the trial judge. Due to the personal nature of the injuries giving rise to a permanent partial disability award, we cannot conclude that the General Assembly intended a non injured spouse to share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage. 308 Md. at 586–87, 521 A.2d 320.

As we see it, appellant's disability payments are retirement benefits, and appellee is entitled to twenty percent of any payment received by appellant. We shall explain.

Appellant directs our attention to several cases discussing the notion that the D.C.Act is akin to states' workers' compensation acts. While we agree that, under some circumstances, benefits received under the D.C.Act may be classified as workers' compensation benefits, appellant's benefits do not fall into that category.

In support of his position, appellant also cites *Frye v. United States*, 72 F.Supp. 405 (1947) and *Brown v. Jefferson*, 451 A.2d 74 (D.C.App.1982). *Frye* involved an application for a tax refund by an injured firefighter and police officer. Construing the D.C.Act, the Court noted that the D.C.Act had the dual purpose of creating

(1) a system for the compensation of policemen and firemen who have been disabled through injury received or disease contracted in the line of duty in the nature of a workmen's compensation act; and

(2) a system for the voluntary retirement of policemen and firemen who have served not less than 25 years and have reached the age of 55, and the involuntary retirement of policemen and firemen who have reached the age of 60. * * *

*Frye*, 72 F.Supp. at 408. The Court concluded that to the extent 26 U.S.C.Int.Rev.Code § 22(b)(5) excludes from gross income "amounts received through accident or health insurance or under workmen's compensation acts as compensation for personal injuries or sickness" benefits received under category (1) *supra*, are exempt from taxation. *Id.* at 409.

Appellant contends that, as his disability benefits are exempt from taxation, we must consider them to be workers' compensation benefits. We remind appellant that we are not here dealing with a tax problem. As we see it, appellant's

benefits [6] exemption from taxation does not dispose of the question before us.

The issue focused on in *Brown* was whether members of the District of Columbia uniformed services who had preexisting conditions aggravated while on duty were entitled to recover medical expenses. Although the *Brown* Court said that "[i]t is clear, ... that both FECA and the substitute provisions applicable to the District of Columbia uniformed services are classified generally as workmen's compensation statutes, and are to be interpreted accordingly," *Brown*, 451 A.2d at 77, that statement was made in the context of a dispute over the meaning of § 4–525 of the D.C.Act, now § 4–613. Although § 4–613 does not expressly so provide, the *Brown* Court concluded that employees who incur medical expenses "resulting from on the job injuries which aggravate pre-existing conditions" are entitled to such benefits. *Id.* at 76.

Appellant's retirement under § 4–616(a) of the D.C.Act, however, involves retirement benefits, not medical expenses.[7] Although we agree that, under some circumstances, certain benefits received under the D.C.Act may be considered as workers' compensation benefits, we agree with the master and the trial court that the facts in the instant case compel a different conclusion.

The record before us discloses that appellant's benefits are an "annuity solely drawn from his retirement funds deposited under [the D.C.Act] and does not include any disability insurance or workers' compensation payments."[8] Moreover, during direct examination of Virginia Mary Hartswick, a Senior Retirement Examiner from the D.C. Office of Pay and Retire-

---

6. Appellant's retirement benefits are excluded from "gross income" as are "amounts received under a statute in the nature of a Workmen's Compensation Act" and are therefore exempt from taxation.

7. D.C.Code § 4–616 was formerly codified at § 4–527 and was known as the "retirement statute." *Brown v. Jefferson*, 451 A.2d at 77.

8. *See* 3 January 1995 letter from Johnetta B. Bond, Deputy Director, Office of the D.C. Controller.

ment System, the following colloquy ensued with appellee's counsel:

Counsel: * * * And did [appellant] receive his retirement benefits as some form of compensation for lost wages? Is that what the [retirement] fund is for?

Witness: No, we have nothing to do with workmen's compensation or any other kind of compensation.

Counsel: What is the nature of Mr. [appellant's] retirement?

Witness: It is strictly a disability retirement annuity.

Counsel: What is a disability retirement annuity?

Witness: Well, he [appellant] was found disabled. It was incurred in the performance of his duty, and so he was allowed to retire early, and—

Counsel: If someone is found disabled in the performance of their duties, are there provisions of the law which allow them to act as their retirement fund earlier than otherwise?

Witness: Well, they can if they are disabled before they are eligible to go as optional.

According to appellant, he could have taken normal retirement based on his twenty years of service despite his injury. Instead, he chose a disability retirement because "the benefits would have been less" under the twenty year retirement plan. In any event, appellant's suggestion that he is receiving workers' compensation benefits is not supported by the record.

In *Lookingbill v. Lookingbill*, the Court of Appeals noted that, under appropriate circumstances, a disability plan may constitute marital property, pointing out:

[t]here are many types of retirement plans under which the rights the beneficiaries possess often differ, depending on a wide variety of factors. *Deering* [*v. Deering*, 292 Md. 115, 437 A.2d 883 (1981) ], following the dominant trend of the law, rejected such distinctions in making the threshold determination of whether a retirement plan is marital prop-

erty. * * * Pension payments are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability. Thus, a disability plan is property and, within the meaning of the [Maryland Marital Property Act], constitutes marital property subject to equitable distribution. 301 Md. 283, 289, 483 A.2d 1 (1984).

In essence, appellant participated in a non-contributory pension plan funded solely by the United States Secret Service. *Deering*, 292 Md. at 118, n. 3. Among other things, his participation in the plan was contingent upon his disability retirement. As we said in *Ohm v. Ohm*,

[e]ven here contributions have been made entirely by the employer, the courts have concluded that retirement benefits are a mode of employee compensation and as such are an earned property right of marriage. * * *

49 Md.App. 392, 396, 431 A.2d 1371 (1981) (citations omitted).

The record reveals that appellant retired under § 4–616(a) of the D.C. Act, which provides in pertinent part:

... whenever any member [9] is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall, upon retirement for such disability, receive an annuity computed at the rate of 2½% of his average pay for each year or portion thereof of his service; provided that such annuity shall not exceed 70% of his average pay, nor shall it be less than 66⅔% of his average pay.

Although retirement under § 4–616(a) is contingent upon disability, a contingent interest has long been recognized as property. *Lookingbill*, 301 Md. at 289. In fact, appellant's retirement benefits are tied directly to his years of service. Thus, they are a deferred form of compensation. *See Deering, supra.* Although appellant strenuously asserts that his dis-

9. D.C.Code Ann. § 4–607 defines member as "any officer or member of ... the United States Secret Service Uniformed Division * * *."

ability occurred following his divorce, he fails to recognize that his disability retirement rights were acquired during his marriage to appellee.[10]

The D.C.Act does not contain an alternative source of funds, and it in no way suggests that appellant will be required to reapply to another agency or pension plan to continue receiving retirement benefits. In other words, § 4–616(a) constitutes the only source of appellant's retirement income. Therefore, he is receiving "retirement benefits" as a "result of his employment by the U.S. Secret Service Uniformed Division." [11] Consequently, appellee's right to receive twenty per cent of appellant's retirement benefits vested the moment he retired. His perception that the separation agreement provided otherwise is of no consequence. Thus, we hold that appellant's retirement income is covered by the parties' separation agreement. Were we to adopt appellant's position, his election of a disability retirement rather than a normal "service" retirement would leave appellee without recourse. We do not believe that such a result was intended.

■ Notwithstanding, appellant urges us to apply District of Columbia law as the D.C.Act is based on District of Columbia law. We agree.

---

**10.** Md.Code Ann. § 8–201(e) defines martial property as "the property ... acquired by one or both parties during the marriage." Marital property excludes property acquired before the marriage, property acquired by inheritance or gift from a third party, property excluded by valid agreement, or property directly traceable to any of these sources.

**11.** Although not a basis for our opinion, we think that no matter how appellant's retirement benefits are characterized, appellee is entitled to twenty per cent of them. We believe that when the parties said

[W]hen and if the defendant John Lebac, Jr. shall be entitled to receive retirement benefits from his U.S. Secret Service employment, the plaintiff, Theresa Lebac, as alternative payee, *as and for marital property* shall receive a sum equal to twenty percent (20%) of any payment received by John Lebac, Jr. as a result of his employment by the U.S. Secret Service Uniformed Division, District of Columbia Police and Fire Fighters Retirement System[,] (emphasis added)

they were agreeing that no matter how characterized, appellant's retirement benefits are "marital property," entitling appellee to twenty per cent of them.

We think the instant case fits squarely within the District of Columbia's Spouse Equity Act of 1988 (the Spouse Equity Act).[12] Under the Spouse Equity Act, former spouses of covered members of the United States Secret Service Uniformed Division [13] are entitled to share in a member's retirement benefits with a "qualifying court order." [14] Section § 1-3002(c) of the Spouse Equity Act defines "qualifying court order" as

> one that by its terms awards to a former spouse all or a portion of an employee's or retiree's retirement benefits, [or] a payment from an employee's or retiree's retirement benefits[.] The order must state the former spouse's share as a fixed amount, or a percentage or a fraction of the annuity, and shall indicate whether the former spouse should receive the amount awarded directly from the District. * * *

■ As the separation agreement awarding appellee twenty per cent of appellant's retirement benefits is enrolled in their judgment of divorce, it is a "qualifying court order." Nothing in the Spouse Equity Act suggests that certain awards are excluded from its coverage. As the District of Columbia must give full faith and credit to the parties' Maryland judgment of divorce,[15] appellee is entitled to twenty per cent of appellant's

---

12. D.C.Code Ann. § 1–3001 et. seq. (1981 & 1995 Supp.).

13. D.C.Code Ann. § 1–3001 (1981 & 1995 Supp.).

14. D.C.Code Ann. § 1–3002 defines "court order" as "any judgment, decree, or property settlement issued by or approved by any court of any state ... in connection with, or incident to, the divorce, annulment of marriage, or legal separation of a District employee or retiree."

15. D.C.Code Ann. § 1–3003(b) states in pertinent part:
   The Mayor shall comply with any qualifying court order that is issued prior to the employee's retirement.
   Appellant was divorced from appellee on 26 November 1986 and retired on 21 June 1991.

retirement benefits, although the benefits are coming from the D.C.Act.[16]

## III.

Appellant finally contends that the trial court erred in awarding appellee attorney's fees. We agree.

Although appellee asserts the award of attorney's fees "meets all the criteria set out in [Md.Code Ann. Family Law § 11–110 (1981, 1984 Repl.Vol.) ]," she overlooks the fact that § 11–110 only applies to proceedings for alimony, alimony pendente lite, and the enforcement of an award of alimony. The case at hand deals only with the enforcement of the parties' separation agreement. In essence, appellee sought to have the separation agreement specifically enforced.

As we have previously said, "[t]he general rule governing the recovery of litigation expenses" is " 'that, other than usual and ordinary court costs, the expenses of litigation—including legal fees incurred by the successful party, are not recoverable in an action for damages.' " *Archway Motors v. Herman*, 41 Md.App. 40, 43, 394 A.2d 1228 (1978) (quoting *Empire Realty v. Fleisher*, 269 Md. at 285–86, 305 A.2d 144 (1973). Absent a statutory requirement, contractual agreement, or the application of Md.Rule 1–341 [17], counsel fees are not recoverable as damages, or as ancillary monetary damages in a suit for specific performance. *Archway*, 41 Md.App. at 44.

---

16. We are cognizant that several federal disability retirement plans specifically disallow distribution of disability retirement benefits. *See e.g.* 10 U.S.C. § 1408 et. seq. (excluding veterans' disability retirement benefits from equitable distribution under state law). We point out, however, that D.C.Code Ann. § 4–616(a) is not such a plan.

17. Formerly Md.Rule 604 b. Md.Rule 1–341 provides that:
[i]n any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

■ Appellee has neither directed us to, nor has our own independent research uncovered, any statute permitting an award of attorney's fees in the case at hand. Nor did the separation agreement contain any such agreement. While we shall vacate the award of attorney's fees and remand the case to the circuit court to consider whether an award of attorney's fees is appropriate under Md.Rule 1–341, we caution the trial court that an award of attorney's fees under Rule 1–341 is an extraordinary remedy. In short, such an award of attorney's fees must be denied absent a finding that appellant had engaged in intentional misconduct or in unnecessary or abusive litigation. *See Major v. First Virginia Bank,* 97 Md.App. 520, 530–31, 631 A.2d 127 (1993), *cert. denied, Major v. Hazel & Thomas,* 331 Md. 480, 628 A.2d 1067 (1993).

**JUDGMENT ENTITLING APPELLEE TO TWENTY PER CENT OF APPELLANT'S RETIREMENT BENEFITS AFFIRMED; JUDGMENT GRANTING ATTORNEY'S FEES TO APPELLEE VACATED, AND CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID TWO–THIRDS BY APPELLANT AND ONE–THIRD BY APPELLEE.**