761 A.2d 369

**Anthony CAMPITELLI**

v.

**Vivian JOHNSTON.**

**No. 2148, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 3, 2000.

Barton D. Moorstein (Blank & Moorstein, L.L.P., on the brief), Rockville, for appellant.

Linda Haspel (Nogah B. Helfant, Neal J. Meiselman and Haspel, Meiselman, Chartered, on the brief), Rockville, for appellee.

Argued before SALMON, EYLER and MARVIN H. SMITH (Ret., specially assigned), JJ.

EYLER, Judge.

This is an appeal from an order of the Circuit Court for Montgomery County denying the petition of Anthony Campitelli, appellant, to terminate or reduce spousal support payable

to Vivian Johnston, appellee. Finding no error, we shall affirm.

## Factual Background

On June 15, 1953, appellant and appellee were married. On August 22, 1972, the parties entered into a Separation and Property Settlement Agreement ("Agreement"), in which they resolved all monetary issues relating to the end of their marriage. As part of the Agreement, appellant agreed to pay appellee spousal support in the amount of $1,500 per month, non-tax deductible to appellant, subject to an annual cost of living increase. The support was to continue until the death of appellee, regardless of any remarriage by appellee or appellant and/or the death of appellant. In addition to the support provision, the parties mutually released each other from all obligations; appellee conveyed her right, title, and interest with respect to several properties to appellant, and appellant agreed to hold appellee harmless with respect to those properties. At the time, appellee had approximately $20,000 in cash, a condominium worth $50,000, and miscellaneous assets.

On September 15, 1972, the parties were divorced. The Agreement was *not incorporated or merged* into the judgment of absolute divorce. On October 4, 1990, the parties entered into an amendment to the Agreement. In that amendment, the support was increased to $40,000 annually and made tax deductible to appellant, but as before, the support continued until the death of appellee. There was no provision in the Agreement, or the amendment, that specifically dealt with modification, *i.e.*, it was neither prohibited nor permitted.

Appellee remarried in 1991. Subsequent to remarriage, appellee paid none of her living expenses, purchased two vacation homes, and generally lived quite comfortably. At the time of trial, appellee's net worth was approximately $615,000, and appellant's net worth was nine to ten million dollars.

Appellant stopped paying support at the end of 1998. Appellee filed a petition to enforce the support provision in the

amendment to the Agreement, and appellant filed a petition to terminate or reduce spousal support. The latter petition asserted as grounds appellee's remarriage and the absence of any need for money by appellee.

On July 6, 1999, the matters were heard by a master, who on July 29, 1999, issued a report and recommendation. The master recommended denial of appellant's motion, reduced the support in arrears to a judgment, and awarded attorney's fees to appellee. Appellant filed exceptions, which were overruled by the circuit court.

### Questions Presented

1. Whether the Trial Court's determination that Title 11 of the Family Law Article of the Maryland Code Annotated was inapplicable to this proceeding was clearly erroneous.

2. Whether an alimony provision within a Property Settlement Agreement requiring the payment of alimony to a former spouse who has remarried is void as against public policy.

3. Whether the finding that the obligation of a payor spouse to continue to pay alimony to a remarried former spouse, where that spouse is worth over $615,000 and has little or no necessary expenses, is not harsh or inequitable constituted an abuse of discretion.

4. Whether the Court was clearly erroneous in awarding attorney's fees to the Appellee.

### Discussion

#### 1.

Appellant contends that the circuit court was "clearly erroneous" in finding that Title 11 of the Family Law Article, entitled "Alimony," was inapposite. Appellant relies on Maryland Code (1984, 1999 Rep. Vol.), § 8–103 of the Family Law Article, *Mendelson v. Mendelson*, 75 Md.App. 486, 541 A.2d 1331 (1988), and *Langley v. Langley*, 88 Md.App. 535, 596 A.2d 89 (1991), *overruled by Shapiro v. Shapiro*, 346 Md. 648, 697

A.2d 1342 (1997). Based on the nature of those authorities and guided by oral argument, we discern appellant's point to be that the support obligation in the 1990 amendment is subject to modification because of the absence of an express statement that it is not subject to modification. Section 8–103(b) provides that a court may modify a provision in an agreement with respect to spousal support executed after January 1, 1976, unless there is a provision that specifically states that it is not subject to court modification.

Section 8–103(c) provides that a court may modify a provision in an agreement with respect to alimony or spousal support executed on or after April 13, 1976, unless there is an express waiver of alimony or spousal support or a provision that specifically states that it is not subject to court modification.

In *Mendelson,* we considered § 8–103 and held that the trial court did not have the power to modify a provision for spousal support in a separation agreement because, while incorporated into the divorce decree, the agreement had not been merged into the divorce decree. In other words, we held that § 8–103 applied only to merged agreements. As a result, absent merger, based on general contract principles, we observed that a spousal support provision in an agreement was not modifiable unless the agreement itself provided for modification.

*Mendelson* has been superseded, in part, by statute. Section 8–105(b), enacted in response to *Mendelson,* provides that a court may modify any provision in an agreement that is incorporated, whether or not merged, into a divorce decree and subject to modification under § 8–103. *See Shapiro v. Shapiro,* 346 Md. 648, 662, 697 A.2d 1342 (1997) (stating that the purpose of § 8–105(b) was to change the rule enunciated in *Mendelson*);[1] *Horsey v. Horsey,* 329 Md. 392, 417 n. 9, 620

---

1. The Court in *Shapiro* held that parties who agree that the amount of spousal support may be court-modified only under certain circumstances, but that support is not otherwise modifiable, have utilized with

A.2d 305 (1993) (stating that the "*Mendelson* interpretation of [§ 8–103(b) and (c)] was largely abrogated by the General Assembly in Ch. 589 of the Acts of 1989 and Ch. 443 of the Acts of 1990, Code (1984, 1991 Repl.Vol.), § 8–105 of the Family Law Article. Thus *Mendelson* furnishes little authority with regard to separation agreements entered into after January 1, 1976.").

Appellant references Family Law §§ 11–108 and 11–107 as providing a standard for determining whether modification should in fact occur. Section 11–108 provides that alimony terminates on the death of either party, on the marriage of the recipient, or if the court finds the termination necessary to avoid *a harsh and inequitable result.* Section 11–107 provides that, on petition of either party and subject to § 8–103, a court may modify the amount of alimony awarded as circumstances and justice require.

Appellee contends that Title 11 is applicable only to awards of alimony and not to contractual agreements with respect to alimony or spousal support, when as here, the agreement was neither incorporated nor merged into a decree.

We note that § 8–105(b) appears to have changed the holding in *Mendelson* only with respect to incorporated but not merged agreements. We further note that *Mendelson, Langley,* and *Shapiro* all involved agreements that had been incorporated but not merged. We need not decide this interesting issue, however, and thus its determination will have to await another day.

The circuit court, in fact, treated the spousal support provision as modifiable and considered whether modification or termination of support was indicated, based on principles of equity. Consequently, regardless of whether it was or was not modifiable by Title 11, appellant was treated as if the provision was modifiable and as if the equitable factors in Title 11 were applicable.

---

legal effect the § 8–103(c)(2) exception to the general rule of modification.

**2.**

Appellant contends that the support provision in question is void as against public policy for requiring the payment of support after the remarriage of appellee. Appellant relies on (1) the present law which limits alimony with respect to amount and duration as being reflective of public policy and (2) a view expressed by courts in a few states consistent with appellant's argument. We find it unnecessary to analyze the statutes and decisions in those few states supportive of appellant's position.

Maryland has long recognized and enforced spousal support agreements. *Gordon v. Gordon,* 342 Md. 294, 300, 675 A.2d 540 (1996) (citations omitted). As stated by the Gordon Court: "The prevailing view is now that 'separation agreements ... are generally favored by the courts as a peaceful means of terminating marital strife and discord so long as they are not contrary to public policy.'" *Id.* at 300–01, 675 A.2d 540 (quoting 5 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 11:7, at 396–99 (R. Lord ed., 4th ed.1993)).

A separation agreement is subject to the general rules governing other contracts. *See Heinmuller v. Heinmuller,* 257 Md. 672, 676, 264 A.2d 847 (1970); *Fultz v. Shaffer,* 111 Md.App. 278, 298, 681 A.2d 568 (1996). The Court of Appeals has been consistently reluctant to strike down voluntary contractual arrangements on public policy grounds. *See Anne Arundel County v. Hartford Accident and Indem. Co.,* 329 Md. 677, 688, 621 A.2d 427 (1993) (stating that the "recognition of an otherwise undeclared public policy as a basis for a judicial decision involves the application of a very nebulous concept to the facts of a given case, and that declaration of public policy is normally the function of the legislative branch ....") (quoting *Adler v. American Standard Corp.,* 291 Md. 31, 45, 432 A.2d 464 (1981)). Maryland courts will strike down voluntary bargains on public policy grounds "only in those cases where the challenged agreement is patently offensive to the public good, that is, where 'the

common sense of the entire community would ... pronounce it' invalid." *Id.* at 687, 621 A.2d 427 (quoting *Md.-Nat'l Capital Park and Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 606, 386 A.2d 1216 (1978)).

The reluctance of the courts to strike down contractual agreements for public policy reasons reflects an interest in protecting the ability of members of the public to structure their own affairs through the creation of legally enforceable promises. *Id.* at 687, 621 A.2d 427 (citing *Md.-Nat'l Capital Park and Planning Comm'n,* 282 Md. at 606, 386 A.2d 1216). This concept "lies at the heart of the freedom of contract principle." *Id.* (quoting *Md.-Nat'l Capital Park and Planning Comm'n,* 282 Md. at 606, 386 A.2d 1216). In discussing the function of the court to balance the public and private interests in enforcement of a disputed promise, the Court of Appeals has stated:

> Enforcement will be denied only where the factors that argue against implementing the particular provision clearly and unequivocally outweigh "the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement" of the contested term.

*Id.* (quoting *Md.-Nat'l Capital Park and Planning Comm'n,* 282 Md. at 607, 386 A.2d 1216). Finally, as stated in *Dwayne Clay, M.D., P.C. v. GEICO,* 356 Md. 257, 263, 739 A.2d 5 (1999):

> The truth is that the theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection. The public policy of one generation may not, under changed conditions, be the public policy of another.

(Citations omitted).

■ It is no doubt true that the 1980 Alimony Act made major changes in the landscape of Maryland alimony law. *See Turrisi v. Sanzaro,* 308 Md. 515, 524, 520 A.2d 1080 (1987).

As stated by the *Turrisi* Court, alimony will now usually be awarded for a definite time, under the guise of rehabilitative alimony. *Id.* at 524–25, 520 A.2d 1080 (stating that " 'in the ordinary case' alimony would be awarded for a definite time, to promote the transitional or rehabilitative function." (citing 1980 Report of the Governor's Commission on Domestic Relations Laws at 4)). However, FL § 11–108 specifically states that alimony terminates upon the remarriage of the recipient "[u]nless the parties otherwise agree." The Maryland General Assembly specifically left room for parties to create their own contracts according to their own unique situations. We see no reason not to apply the general policy upholding freedom to contract. We discern no "clear and unequivocal" public policy against the payment of spousal support after the remarriage of the recipient spouse. We decline to find that separation agreements that require the continued payment of spousal support after the remarriage of the recipient spouse are void as against public policy.

### 3.

■ Appellant argues that the circuit court's decision not to terminate support on the ground that the status quo was not harsh or inequitable was an abuse of discretion. Appellant argues that appellee is wealthy, self-sufficient, and living a luxurious lifestyle, and is thus not in need of support payments.

The appropriate standard of appellate review of this issue is governed by Md. Rule 8–131(c), which states that an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." As we stated in *Blaine v. Blaine,* 97 Md.App. 689, 707, 632 A.2d 191 (1993), we must defer to the fact-finding of the trial court unless it is clearly wrong or an abuse of discretion. *See also Brodak v. Brodak,* 294 Md. 10, 28–29, 447 A.2d 847 (1982) (stating that "an alimony award should not be disturbed unless the chancellor's discretion was arbitrarily used or his judgment was clearly wrong.") (citations omitted).

■ A substantial change in one party's financial circumstances can, under appropriate circumstances, be legally sufficient to justify a change in spousal support. *Lott v. Lott,* 17 Md.App. 440, 445, 302 A.2d 666 (1973). As stated by the *Lott* Court: "What amounts to a *substantial* change in [one party's] financial circumstances is a matter to be determined in the sound discretion of the chancellor for which there are not fixed formulas or statutory mandate." *Id.* at 447, 302 A.2d 666. Appellant's arguments are based on his belief that appellee "does not need alimony payments" since her remarriage and urges that "the facts in this case require a factual finding that the continued payment of alimony is harsh and inequitable ... and/or that the alimony should be modified as circumstances and justice require."

In *Blaine,* we stated: "'The presence of a 'harsh and inequitable' result is not an objective, absolute standard; rather, it is a subjective classification, most appropriately determined by a trial court judge in whose judgment the exercise of sound discretion in such matters is reposed." 97 Md.App. at 706, 632 A.2d 191. In the instant case, the trial judge noted that had there been a change in appellant's financial circumstances that had reduced his ability to pay, there possibly would have been reason to modify the Agreement to avoid a harsh or inequitable result; however, the court further found that there was no harsh or inequitable result under the existent facts. We do not find any abuse of discretion in this case.

### 4.

■ Appellant contends that the circuit court erred in awarding appellee attorney's fees. We agree.

■ The general rule with regard to the recovery of litigation expenses is that, other than usual and ordinary court costs, litigation expenses, including counsel fees, are not recoverable by the successful party in an action for damages. *See Lebac v. Lebac,* 109 Md.App. 396, 409, 675 A.2d 131 (1996)(quoting *Archway Motors, Inc. v. Herman,* 41 Md.App. 40, 43, 394 A.2d 1228 (1978), *cert. denied,* 289 Md. 74, 422 A.2d

353 (1980) (quoting *Empire Realty Co. v. Fleisher*, 269 Md. 278, 285–86, 305 A.2d 144 (1973))). Without a statutory authorization, a contractual agreement, or the application of Md. Rule 1–341,[2] attorneys' fees may not be recovered as damages, or as ancillary monetary damages in a suit for specific performance. *See id.* (citing *Archway*, 41 Md.App. at 44, 394 A.2d 1228); *see also Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership*, 100 Md.App. 441, 452, 641 A.2d 977 (1994) (stating that as a general rule, "a trial court may award attorneys' fees only in the unusual situation where the trial court is [statutorily] authorized to award the prevailing litigant reasonable attorneys' fees or where, as [sic] more common, a contract between the parties specifically authorizes attorneys' fees .")

In the instant case, neither the Agreement nor the amendment contains any provision with regard to attorneys' fees in the event of a dispute over the contract. Thus, there is no contractual basis to authorize an award of counsel fees to appellee.

In an alimony proceeding, a party may request counsel fees pursuant to FL § 11–110. However, § 11–110 only applies to proceedings for alimony, alimony pendente lite, the modification of an award of alimony, and the enforcement of an award of alimony. Analogous to the facts in the instant case, this Court in *Lebac* was faced with the issue of whether attorneys' fees were properly awarded in a proceeding for the enforcement of the parties' separation agreement, and the Court held that § 11–110 was inapposite in such a case. 109 Md.App. at 409, 675 A.2d 131. The result here is clearer than in *Lebac* because the agreement in this case was not incorporated into

---

2. Md. Rule 1–341 provides:

In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

the decree. Furthermore, in *Lebac*, this Court did not find any other statute permitting an award of attorneys' fees in a proceeding for the enforcement of a separation agreement. *Id.* at 410, 675 A.2d 131. We do not find any relevant change in the law since *Lebac*, and thus there is no statutory basis to award attorneys' fees to appellee in this case.

In the instant case, the master based her recommendation of attorneys' fees specifically on § 11–110. The circuit court did not expressly give its rationale for affirming the award of counsel fees. Neither the master nor the trial court gave any indication that the award of attorneys' fees was made on the basis of Md. Rule 1–341, there was no request under the Rule, and there were no findings of fact pursuant to that Rule. Accordingly, there is no basis upon which we can uphold the award of attorneys' fees in this case.

**ORDER GRANTING ATTORNEYS' FEES TO APPEL-LEE REVERSED. JUDGMENTS OTHERWISE AF-FIRMED. COSTS TO BE SPLIT EQUALLY BETWEEN THE PARTIES.**