799 A.2d 452

**Stanley I. PANITZ**

v.

**Harriet PANITZ.**

**No. 1578, Sept. Term 2001.**

Court of Special Appeals of Maryland.

June 4, 2002.

628

Shale D. Stiller (Piper, Marbury, Rudnick & Wolfe LLP, on the brief), Baltimore, for appellant.

Benjamin Rosenberg (Lynn E. Ricciardella and Rosenberg, Proutt, Funk & Greenberg, LLP, on the brief), Baltimore, for appellee.

Argued before DAVIS, BARBERA, GREENE, JJ.

DAVIS, J.

In the instant appeal, we are called upon to decide whether appellant's challenge to the judgment of the lower court that he continue alimony payments to appellee despite her living arrangements with a live-in lover constitutes an innovative theory for extension or modification of the law (*see Kelley v. Dowell,* 81 Md.App. 338, 341, 567 A.2d 521 (1990)) or an abuse of the judicial process by filing an action without substantial justification. Appellant/cross-appellee Stanley I. Panitz appeals from the Decree of Divorce (the Decree) dated February 15, 1979, whereby he and cross-appellant/appellee Harriet Panitz were divorced.[1] On February 9, 2001, appellee filed a Complaint for Declaratory Judgment in the Circuit Court for Baltimore County, seeking a determination and adjudication of her rights under the Marital Settlement Agreement (the Agreement), dated February 14, 1979, alleging that appellant's unilateral reduction in her monthly "support and maintenance" payments was unwarranted. Believing the facts were not in dispute, appellee filed a Motion for Summary Judgment shortly thereafter.

Appellee filed a Petition for Contempt contemporaneously with the filing of the complaint, in light of appellant's decision to withhold the full amount of support due pursuant to the Decree. A show cause hearing was conducted (Norris Byrnes, J.) and the trial court ordered appellant to pay the support arrearages. In addition, the trial court ordered appellant to pay $2,000 toward the counsel fees incurred by appellee in

---

1. In an effort to keep the factual background and legal analysis as clear as possible, we simply refer to appellant/cross-appellee as "appellant" and appellee/cross-appellant as "appellee" for the remainder of the opinion.

prosecuting the petition. The court expressly declined to rule on the merits of the original complaint.

A hearing on appellee's motion for summary judgment was held on June 27, 2001. On July 1, 2001, appellant filed a Petition for Award of Attorney's Fees, seeking reimbursement for the fees incurred to prosecute the complaint. On August 29, 2001, the trial court, in two separate orders, granted summary judgment in favor of appellee and denied her request for attorney's fees. Appellant noted his timely appeal on September 20, 2001, presenting one question for our review, which we rephrase for clarity as follows:

I.  Did the trial court err in ruling that appellant's obligations under the Agreement were not suspended while appellee cohabitated with another man?

Appellee additionally noted her cross-appeal on September 24, 2001, presenting for our review the following question:

II.  Did the trial court err in declining to award appellee attorney's fees incurred in the prosecution of her Complaint for Declaratory Judgment?

We answer the above questions in the negative and, therefore, affirm the judgments of the trial court.

## FACTUAL BACKGROUND

Appellant and appellee were married on June 19, 1949. On February 14, 1979, they entered into the Agreement, which required appellant to pay appellee, "for her support and maintenance," $1,666.67 per month provided, however,

that all such payments shall cease, and [appellant] shall have no further obligation to make any payment pursuant to this Paragraph 3 after the first to occur of any one of the following events: (a) remarriage of [appellee] (except as hereinafter provided); (b) death of [appellee], or (c) death of [appellant].... Should [appellee] remarry, [appellant] shall pay unto her for her support and maintenance until the first to occur of (a) death of [appellee], or (b) death of [appellant], the sum of ... $416.67 per month, accounting from and with

the first payment being due and payable on the first day of the first month following the date of her remarriage. The provisions of this paragraph 3 shall not be subject to court modification.

Pursuant to Paragraph 22 of the Agreement, entitled "Non–Modifiability":

Except for the provisions contained in this Agreement relating to the custody, visitation and support of the minor child of the parties, none of the other provisions of this Agreement shall be subject to modification by any [c]ourt.

The Agreement was incorporated into the parties' Divorce Decree by reference and the parties were thus bound to perform in accordance with the terms thereof. Paragraph three ordered appellant to

pay directly unto [appellee] and not through any agency of the court, for her support and maintenance, the fixed and unchangeable sums provided in the aforesaid Agreement between the parties and subject to the terminal events contained in the Agreement.

Until January 2, 2001, appellant diligently paid appellee all support and maintenance payments. The cessation of payments was precipitated by the commencement of a relationship between appellee and an unmarried man (Mr. X).[2] Appellee and Mr. X have never married; however, the two live together in Mr. X's condominium in a high rise building next to the Inner Harbor in Baltimore. Appellee has never attempted to conceal their living arrangement; rather she has used Mr. X's address as her own on all court papers.

In a letter dated November 4, 2000, appellant informed appellee that he would reduce the amount of her support payments:

---

**2.** Appellee's paramour was referred to in the papers filed with the trial court as Mr. X. In an effort to maintain continuity and facilitate the comprehension of the complex facts of the case, we will also refer to him as Mr. X.

On one hand, while our divorce agreement says that alimony would cease if you re-marry, it is silent as to living together. On the other hand, the practical and fair view seems to lead to its being terminated. *So my decision is to end payments, except for $5,000 per year, as of December 31, 2000 and to resume them if you return to a single life, unless you have been married.*

For reasons totally separate from money, I truly wish you and [Mr. X] a happy life together.

On January 1, 2001, as stated in his letter, appellant reduced the amount of support paid to appellee to $416.67 per month.

In response to the reduction in her support, appellee filed the instant action. Appellant offered to pay the disputed payments into the court registry or into an escrow fund held by counsel for appellee until the issues raised in appellee's complaint were resolved. The offer was rejected, however, and, at a hearing on March 27, 2001, the trial judge stated that he would hold appellant in contempt if he failed to pay the arrearages. Appellant complied and, in addition, continued to make the full monthly payments. As stated above, the court granted appellee's motion for summary judgment.

## LEGAL ANALYSIS

### I

Relying on "fundamental issues of the law of contracts," e.g., the doctrines of unconscionability and frustration of purpose, appellant contends that the trial court should have mitigated the strict rule of *pacta sunt servanda*, which means "agreements are to be observed." Because a basic assumption of the contract has been disproved, appellant maintains, he should be excused from performance. Appellee counters that appellant's appeal "is utterly without merit," asserting that he is "conjur[ing] up theories of contract law that have absolutely no relevancy to this case."

Pursuant to Md.Code (1999 Repl.Vol.), Fam. Law (F.L.) § 8–105, entitled "Power of court to enforce or modify provisions,"

[t]he court may modify any provision of a deed, agreement, or settlement that is:

(1) incorporated, whether or not merged, into a divorce decree; and

(2) *subject to modification under § 8–103 of this subtitle.*

(Emphasis added.)

F.L. § 8–103(c) provides:

The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:

(1) an express waiver of alimony or spousal support; or

(2) *a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification.*

(Emphasis added.)

As discussed in *Campitelli v. Johnston,* 134 Md.App. 689, 761 A.2d 369 (2000), F.L. § 8–105 was enacted in response to *Mendelson v. Mendelson,* 75 Md.App. 486, 541 A.2d 1331 (1988), wherein we held that the trial court was without power to modify a spousal support provision in a separation agreement unless the agreement had been merged in the divorce decree. Because of F.L. § 8–105, a court may now modify *any* incorporated support provision—whether merged or separate—so long as such modification is not prohibited by F.L. § 8–103 and, as delineated above, there are only two situations in which a trial court's power to modify a support provision will be inhibited.

At the conclusion of the June 27, 2001 hearing in the circuit court, the trial judge stated that he would "sign a decree enforcing or declaring that [appellant] must continue to pay the $1,666.67 until [appellee] remarries or one of the parties

dies." The court's findings could not be more fully supported by clear and unambiguous Maryland law. We explain.

It is well settled that, in order to interpret a statute, an appellate court must first determine the intention of the legislature in enacting it. *Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 756 A.2d 987 (2000). The rules of statutory interpretation have been stated by the Court of Appeals and by this Court on many occasions. *See, e.g., Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 578–79, 683 A.2d 512 (1996)(holding that "the cardinal rule is to ascertain and effectuate legislative intent"); *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994)(explaining that "[t]he cardinal rule of statutory construction is to ascertain and carry out the intent of the legislature"). "[O]rdinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, [an appellate court must] end [its] inquiry there." *Chase,* 360 Md. at 128, 756 A.2d 987. Indeed, "[w]here the statutory language is plain and unambiguous, a court may neither add nor delete language so as to 'reflect an intent not evidenced in that language,' nor may it construe the statute with 'forced or subtle interpretations' that limit or extend its application.'" *Id.* (citations omitted). Moreover, whenever possible, an appellate court should refrain from reading a statute in such a manner that would render nugatory any words, clauses, sentences, or phrases. *Id.*

Family Law § 8–103 is, indeed, clear and unambiguous. Plainly stated, a trial judge is prohibited from modifying a support provision in two situations. The first enumerated exception to the trial court's powers of modification, which is irrelevant here, arises when there has been an express waiver of alimony or any other spousal support. The second exception, however, is apposite. In the Agreement, appellant and appellee consented to a provision which prohibited the trial court from modifying any provision contained therein:

Except for the provisions contained in this Agreement relating to the custody, visitation and support of the minor child of the parties, *none of the other provisions of this Agreement shall be subject to court modification.*

(Emphasis added.) In light of such clear contractual language, we decline to overrule the trial court's finding that it was prohibited from modifying the Agreement. We fail to perceive any error in its judgment.

■ Moreover, appellant's argument that traditional principles of equity should have mandated a different result is without merit. Rather, we concur with appellee's position that, "[i]n *Mendelson, [supra]*, this Court considered and rejected the basic premise of [appellant's] arguments." The facts surrounding *Mendelson* are, indeed, on point. There, the parties had entered into a separation agreement that provided for the payment of monthly support to the wife, subject only to the subsequent remarriage of the wife or the death of either party. The alimony payments were modifiable only in the event the husband became disabled or retired at age sixty or older. As here, the husband petitioned the court in an attempt to have his alimony obligations terminated or, in the alternative, modified, claiming that to require him to continue the payments would be "unconscionable" in light of the fact that the wife had been cohabitating with another man. The court rejected his argument, however, relying on the clear and unambiguous language contained in the separation agreement:

[T]he separation agreement states that the support shall terminate upon the death of either party or upon the remarriage of appellee. This language ... is plain and unambiguous. Since neither death nor appellee's remarriage has occurred, the termination provisions have not been activated. Appellant argues that appellee has lived with Mr. Epstein for six years in a relationship that has all the attributes of marriage. The problem with that assertion is that a relationship with "all the attributes of marriage" does not amount to marriage. Marriage, within the meaning of the plain language of the separation agreement, means

undergoing a ceremony and obtaining a marriage license. *See,* [F.L.] § 2–401. Appellee and Mr. Epstein have not complied with these legal requirements for marriage. Furthermore, it is firmly settled that Maryland does not permit common law marriages to be formed within its borders. Since appellee has not remarried, the court did not err in refusing to terminate the contractual spousal support.

*Mendelson,* 75 Md.App. at 501–02, 541 A.2d 1331 (citations omitted). We concur with this holding and, because the facts in *Mendelson* are strikingly similar to those in the case *sub judice,* we apply its rationale.

Appellee and Mr. X have not married, nor have they obtained a marriage license. These facts are conceded by appellant. Based on the fundamental terms of the Agreement, appellant did not have the right to unilaterally reduce his monthly support obligation because he believed it to be unfair to require him to continue to support appellee. Although it is unfortunate for appellant, "the facts remain that he negotiated and freely entered into the terms of the separation agreement; the validity of that agreement has been judicially affirmed ... and appellant will not be heard to challenge the agreement or any of its provisions at this late date." *Mendelson,* 75 Md.App. at 503, 541 A.2d 1331 (citing *Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436 (1983)).

■ Also unavailing is appellant's argument that the doctrine of frustration of purpose would permit him to suspend payments to appellee in light of her current living situation. The doctrine is addressed in Chapter 11 of the Restatement of Contracts (Second), entitled "Impracticability of Performance and Frustration of Purpose." The Introductory Note to the pertinent section explains the interplay between the doctrine of frustration of purpose and the basic canons of contract law:

Contract liability is strict liability. It is an accepted maxim that *pacta sunt servanda,* contracts are to be kept. The obligor is therefore liable in damages for breach of contract even if he [or she] is without fault and even if

circumstances have made the contract more burdensome or less desirable than he [or she] had anticipated.

[However,] [e]ven where the obligor has not limited his [or her] obligation by agreement, a court may grant him [or her] relief. An extraordinary circumstance may make performance so vitally different from what was reasonably to be expected as to alter the essential nature of that performance. In such a case the court must determine whether justice requires a departure from the general rule that the obligor bear the risk that the contract may become more burdensome or less desirable.

■■■■ Section 265 provides that an obligor's duties may be discharged if that party's "principal purpose is substantially frustrated without his [or her] fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made . . . ." Restatement (Second) of Contracts, § 265 (1981). Inherent in the definition of the doctrine, however, are three limitations on its application. "First, the purpose that is frustrated must have been a principal purpose of that party in making the contract." Restatement (Second) of Contracts, § 265 cmt. a. "Second, the frustration must be substantial." *Id.* "Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Id.*

■■■■ "The principle underlying the frustration of purpose doctrine is that where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance, the contract will be discharged." *Harford County v. Town of Bel Air,* 348 Md. 363, 384, 704 A.2d 421 (1998)(citing *Montauk Corp. v. Seeds,* 215 Md. 491, 499, 138 A.2d 907 (1958)). In *Montauk,* the Court of Appeals outlined three factors that courts should examine when determining whether the frustration doctrine applies: "(1) whether the intervening act was reasonably foreseeable; (2) whether the act was an exercise of sovereign power; and (3) whether the parties were instrumental in bringing about the intervening event." *Montauk,* 215 Md. at

499, 138 A.2d 907. *See also Acme Markets v. Dawson Enterprises,* 253 Md. 76, 90–91, 251 A.2d 839 (1969). Under this doctrine, "if a contract is legal when made, and no fault on the part of the promisor exists, the promisor has no liability for failing to perform the promised act, after the law itself subsequently forbids or prevents the performance of the promise." *Wischhusen v. Spirits Co.,* 163 Md. 565, 572–573, 163 A. 685 (1933). "In order to succeed under this theory, however, performance under the contract must be objectively impossible." *Harford,* 348 Md. at 385, 704 A.2d 421.

The doctrine of frustration of purpose is inapplicable to the case at hand because appellant's situation fails the first prong of the *Montauk* test. The trial court correctly concluded that, at the time the parties divorced, appellant weighed the risk of being obligated to pay a fixed amount of alimony not subject to modification, versus the risk of being obligated to pay alimony for the balance of appellee's unmarried life: "[Appellant] weighed a doubt against a certainty. I have no doubt about that...." The weighing of options does not support his position that the situation at hand was unforeseeable. Appellant, with the assumed guidance of counsel, entered into the Agreement that contained an express limitation on a trial court's power to modify the amount of support due. Moreover, as was explained in the Introductory Note of the Restatement,

> [t]he obligor who does not wish to undertake so extensive an obligation may contract for a lesser one by using one of a variety of common clauses: he [or she] may agree only to use his [or her] "best efforts"; ...; he [or she] may reserve a right to cancel the contract; ...; or he [or she] may limit his [or her] damages for breach.

In the case at hand, however, appellant not only failed to take such preventative measures, but, as stated above, he acquiesced to the inclusion of a clause which precluded involvement by a court of law.

■ In order to successfully argue that performance of the terms of a contract should be justifiably excused, one must

satisfy all three prongs of the test handed down in *Montauk.* Appellant failed to vault even the first obstacle. Moreover, when, as here, the terms of the contract at issue are clear and unambiguous, a trial court may not rewrite the contract "even to avoid a hardship." *Stueber v. Arrowhead Farm Estates Ltd. Partnership,* 69 Md.App. 775, 780, 519 A.2d 816 (1987).

## II

In her cross-appeal, appellee alleges that the trial court erred in denying her petition for reimbursement of the attorney's fees incurred in prosecuting her Complaint for Declaratory Judgment. She asserts that the trial court incorrectly based its decision that it was "unnecessary" for her to seek a declaration of her right to alimony on the fact that "[t]he issue was resolved at the hearing on contempt"; rather, she contends that her "Complaint for Declaratory Judgment was a proceeding to enforce an award of alimony and was not, as the [c]ircuit [c]ourt held, simply a proceeding to resolve a contract dispute." Furthermore, she maintains, the court's finding that F.L. § 11–110, which governs a party's liability for "reasonable and necessary expenses," was inapplicable constitutes clear error. Not surprisingly, appellee disagrees, countering that the court correctly determined that F.L. § 11–110 was inapplicable to the proceedings in the trial court. In any event, he continues, assuming, *arguendo,* F.L. § 11–110 were applicable, appellee failed to demonstrate that appellant's defense was without "substantial justification," as required under that section.

Pursuant to F.L. § 11–110(b), the trial court "may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding." Moreover,

> [u]pon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the

other party the reasonable and necessary expense of prosecuting or defending the proceeding.

F.L. § 11–110(d).

The applicability of F.L. § 11–110 to separation disputes was examined in *Lebac v. Lebac,* 109 Md.App. 396, 675 A.2d 131 (1996). In *Lebac,* the wife had filed suit against the husband, seeking specific performance of their separation agreement, as it pertained to the husband's retirement benefits. In refusing to permit the wife to recover attorney's fees in an action to enforce the parties' separation agreement under F.L. § 11–110, we noted that the wife overlooked the fact that the section "only applies to proceedings for alimony, alimony *pendente lite,* and the enforcement of an award of alimony." *Lebac,* 109 Md.App. at 409, 675 A.2d 131. The concept is supported by "the general rule governing the recovery of litigation expenses," which provides that "other than usual and ordinary court costs, the expenses of litigation—including legal fees incurred by the successful party, are not recoverable in an action for damages." *Id.* (citations omitted). Therefore, "[a]bsent a statutory requirement, contractual agreement, or the application of Md. Rule 1–341,[3] counsel fees are not recoverable as damages, or as ancillary monetary damages in a suit for specific performance." *Id.* As a result, we reversed the trial court's award of attorney's fees to the wife and remanded the case to consider whether an award of attorney's fees was appropriate under Rule 1–341.

Four years later, in *Campitelli, supra,* we revisited the issue, upholding our decision in *Lebac.* Again, we reasoned that, because "[F.L.] § 11–110 only applies to proceedings for alimony, alimony *pendente lite,* the modification of an award of

---

3. Pursuant to Rule 1–341:

[I]n any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification[,] the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

alimony, and the enforcement of an award of alimony," there was no basis to award the wife attorney's fees. *Campitelli*, 134 Md.App. at 700, 761 A.2d 369. We did not remand the case to consider whether such fees were warranted under Rule 1–341, however, for reasons not stated in the opinion.

*Lebac* and *Campitelli* speak directly to the issue at hand and, therefore, we affirm the trial court's denial of attorney's fees. It is unnecessary to address whether appellant had "substantial justification" for defending the case, as the statute is inapplicable. Moreover, as noted by the trial court, paragraph 10 of the Agreement requires each of the parties to pay his or her own attorney's fees "in connection with this agreement . . . and each party hereby releases the other from any obligation to pay any counsel fees on his or her behalf in connection with any matter or thing whatsoever whether past, present, or future." We reasoned above that the parties freely entered into the Agreement as a binding contract and, therefore, the terms of the Agreement stand. We perceive no exception with regard to the issue of attorney's fees.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**