885 A.2d 894

**Jonathan Scott SMITH**

v.

**Linda Cheryl LUBER.**

**No. 2291 Sept.Term, 2004.**

Court of Special Appeals of Maryland.

Nov. 3, 2005.

462

Jonathan Smith (Pro Se, on the brief), Columbia, for Appellant.

Linda C. Luber (Pro Se, on the brief), Woodstock, for Appellee.

Panel: DAVIS, KRAUSER and BARBERA, JJ.

DAVIS, Judge.

In this appeal, we are called upon to reiterate the oft-stated essence and character of a consent decree; that, despite the imprimatur conveyed by the endorsement affixed to the decree by the court, it derives its legal efficacy from the consent

of the parties. Jonathan S. Smith, appellant, a Maryland lawyer, appeals from the entry of a judgment of absolute divorce and the entry of an Order of Court Reflecting Agreements of the Parties, entered on May 7, 2004, by the Circuit Court for Anne Arundel County. Appellant also appeals from the Order of the court denying his Amended Motion to Vacate or, Alternatively, to Alter, Amend, or Revise Order and Judgment, entered on November 15, 2004. Appellant presents two issues for our review, which we rephrase as follows:

1. Did the trial court abuse its discretion by entering the Order of Court Reflecting the Parties' Agreement when the Order failed to accurately reflect the agreement of the parties?

2. Did the trial court abuse its discretion by denying appellant's motion and amended motion to vacate or, alternatively, to alter, amend, or revise Order and judgment?

We answer the first question in the affirmative. Accordingly, we vacate the Order of the circuit court and remand with instructions to revise the court's Order and enter an Order that accurately reflects the agreement the parties have consented to on the record.

## FACTUAL BACKGROUND

This matter involves a contentious divorce between appellant and appellee, Linda C. Luber. On February 15, 2002, appellant filed for a limited divorce, citing constructive desertion on the part of appellee as the grounds in the Circuit Court for Howard County, where appellant is a practicing attorney. Appellee's counter-complaint for limited divorce, on the grounds of abandonment and desertion, was filed on March 18, 2002. After the filing of several motions and other documents in that court, appellant filed a motion requesting that the case be transferred to Anne Arundel County due to his personal and professional relationships in Howard County. After all of the judges in Howard County recused themselves,

the administrative judge signed the Order transferring the case on May 13, 2002 to Anne Arundel County.

The parties filed voluminous pleadings and documents with the court, eventually reaching an agreement with respect to support and visitation of their minor child. The remaining issues to be resolved at trial involved the disposition of their substantial financial and property holdings. The case proceeded to trial on the merits on November 17, 2003, and continued for eight days. During the course of the trial, the parties reached agreement on some of the issues and those agreements were placed on the record. On November 25, 2003, the parties reached an agreement as to the remaining issues, which ended the litigation. The remaining agreements reached by the parties were entered into the record in open court. Both parties were asked qualifying questions by their attorneys about their acceptance of the agreement on the record and both acknowledged their acceptance.

The following day, the parties returned to court to enter the findings of fact regarding the grounds for divorce into the record. The court granted the parties' request to sign the divorce decree after January 1, 2004, in order that they may file joint tax returns and take advantage of capital gains and losses resulting from the sale of certain assets under their agreement. The trial court requested that the parties reduce the agreement to writing as it was read into the record, and it was further agreed that the parties would submit to the court for signing the written agreement as a Consent Property Agreement. Counsel for appellee volunteered to draft the consent property agreement for submission to the court.

Thereafter, counsel for appellee prepared a draft consent agreement, which was submitted to counsel for appellant for review. Upon reviewing the agreement, counsel for appellant rejected the document on the grounds that it failed to accurately reflect the agreement as it was entered into the record. By letter dated December 9, 2003, counsel for appellant suggested ordering the transcripts and attaching them to a brief consent order, because the attached transcripts accurate-

ly reflected the agreement of the parties. By letter dated December 10, 2003, counsel for appellee rejected the suggestion to attach the transcript, preferring to have exact language in a written consent agreement, to avoid further litigation. On December 15, 2003, appellant's counsel forwarded a seven-page letter outlining appellant's issues with the consent order as submitted by appellee's counsel. On December 17, 2003, appellee's counsel submitted a revised consent order to appellant detailing the changes made and corrections to the order. By letter dated December 19, 2003, counsel for appellee submitted a letter to the court documenting the consternation of the parties surrounding the language of the consent order. There was then a letter submitted to the court by appellant's counsel, on December 23, 2003, in response to the December 19, 2003 letter, notifying the court that appellant refused to accept the agreement as written. Appellee's brief mentions other letters exchanged between the parties; however, none was included in the record and therefore they are not available for the court to review.

On May 5, 2004, appellee's counsel again wrote to the court. In that letter, it was explained that the sale of the marital home was to be settled on May 14, 2004; the letter also requested the court to do what it could to provide the parties with a decree in a timely fashion. On May 7, 2004, appellant's counsel notified the court by letter of the continuing objection to the consent order submitted by appellee for its failure to accurately reflect the agreement of the parties. He also requested that the court execute the consent order and divorce decree attached to their letter.

The court executed the Order of Court Reflecting Agreements of the parties, along with the Judgment of Absolute Divorce, on May 7, 2004. Appellant filed an Amended Motion to Vacate or, Alternatively, to Alter, Amend, or Revise Order and Judgment on June 23, 2004. Appellee filed a response to appellant's motion and, on November 15, 2004, the court issued a memorandum opinion. In the opinion, the court concluded that the Order of May 7, 2004 accurately and properly reflected the agreement of the parties and the Order

shall remain in full force and effect. Appellant filed this timely appeal.

## LEGAL ANALYSIS

■■■ Appellant claims the trial court abused its discretion by entering the Order of Court Reflecting Agreements of the Parties because the Order does not accurately reflect the parties' agreement. Appellant also asserts the Order was entered without his consent and over his repeated objections. We have said that abuse of discretion occurs

> "where no reasonable person would take the view adopted by the [trial] court"; or "when the court acts without any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."

*Das v. Das,* 133 Md.App. 1, 15–16, 754 A.2d 441 (2000)(citing *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025 (1994)) (citations omitted). We afford the trial judge's decision making wide latitude under the abuse of discretion standard. *See Das,* 133 Md.App. at 15, 754 A.2d 441. Our case law makes clear that we will only reverse a decision of the trial court on review for abuse of discretion where "justice has not been done," and "there is a grave reason for doing so." *Das,* 133 Md.App. at 16, 754 A.2d 441 (citing *Wormwood v. Batching Systems, Inc.,* 124 Md.App. 695, 700, 723 A.2d 568 (1999)). We will not reverse simply because we would not have made the same ruling as the trial court. *See North,* 102 Md.App. at 14, 648 A.2d 1025.

■■ Under consideration in this appeal is the parties' settlement agreement. Settlement agreements are looked upon favorably by courts because they further the interest of

efficient and economical administration of justice and the lessening of friction and acrimony. *Dorsey v. Wroten,* 35 Md.App. 359, 361, 370 A.2d 577 (1977) (citing *Chertkof v. Harry C. Weiskittel Co.,* 251 Md. 544, 550, 248 A.2d 373 (1968)). A consent judgment or decree has been defined as "an agreement of the parties with respect to the resolution of the issues in the case or in settlement of the case, that has been embodied in a court order and entered by the court, thus evidencing its acceptance by the court." *Long v. State,* 371 Md. 72, 82, 807 A.2d 1 (2002) (citing *Jones v. Hubbard,* 356 Md. 513, 529, 740 A.2d 1004 (1999); *Chernick v. Chernick,* 327 Md. 470, 478, 610 A.2d 770 (1992)).

The settlement agreement in this case was entered on the record in open court and acknowledged by the parties. The agreement was comprehensive with respect to issues in the case and effectively ended the litigation. The court accepted the agreement and requested appellee's counsel to reduce the agreement to writing and submit it to the court as a Consent Order. Appellant does not challenge the fact that he entered into an agreement which is binding, but whether the language used in the court's Order is reflective of that agreement.

Because a consent judgment is entered into with the sanction of the court, normally no appeal will lie. *See Long,* 371 Md. at 86, 807 A.2d 1; *Wroten,* 35 Md.App. at 361, 370 A.2d 577 (citing *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 24, 166 A. 599 (1933)). "By agreeing to settle the parties give up any meritorious claims or defenses they may have had in order to avoid further litigation." *Long,* 371 Md. at 86, 807 A.2d 1. Our cases reflect the understanding that, under normal circumstances, the only question which may be raised concerning a consent decree is whether the parties entered the decree by consent. *Wroten,* 35 Md.App. at 361, 370 A.2d 577 (citing *Prince George's County v. Barron,* 19 Md.App. 348, 349, 311 A.2d 453 (1973)). When the public policy encouraging settlement is so strong that settlement agreements will not be disturbed on the grounds of mistake or withdrawal of consent by a party, it is of paramount importance that the agreement,

binding the parties, is as accurate as possible. *See Long,* 371 Md. at 85, 807 A.2d 1 (citing *Chernick,* 327 Md. at 481–83, 610 A.2d 770).

Maryland appellate courts have undertaken to review cases involving consent judgments. In *Wroten,* we held "the entry of a judgment by consent implies that the terms and conditions have been agreed upon and consent thereto given in open court or by filed stipulation." 35 Md.App. at 363, 370 A.2d 577. That case involved the withdrawal of a party's agreement to settle where there was no consent given in open court or by filed stipulation. In *Chernick,* the Court of Appeals considered whether a party may withdraw his or her consent once the agreement had been filed with the court. 327 Md. at 481, 610 A.2d 770. In that case, the Court held

> that where . . . the parties have reached a valid contractual agreement as to the terms of a consent judgment, have reduced it to writing and signed the proposed judgment through their authorized agents, have filed it with the court and removed the case from the trial calendar, a judge may sign the "consent judgment" even if prior thereto one party has tried to rescind the contract to settle. Whether a judge could still have signed the "consent judgment" even if all those factors were not present is not before us in the instant case.

*Id.* at 485, 610 A.2d 770.

In a more recent decision, the Court considered a settlement agreement reached by the parties who requested the judgment be entered in a civil contempt case. The court refused to enter the agreement, instead entering a modified agreement. *Long,* 371 Md. at 88, 807 A.2d 1. In reaching its decision that it was error for the court to enter a modified agreement, the Court concluded that "[t]he modified agreement materially altered the agreement reached by the parties." *Id.* at 89, 807 A.2d 1. The Court also stated:

> [A] court's refusal to enter a consent judgment submitted by the parties is reviewable for an abuse of discretion. Moreover, while the court may either approve or deny the

issuance of a consent decree, generally it is not entitled to change the terms of the agreement stipulated to by the parties.... If the court discerns a problem with a stipulated agreement, it should advise the parties of its concern and allow them an opportunity to revise the agreement.

*Id.* at 86–87, 807 A.2d 1 (internal quotation marks and citations omitted). Although the facts of these cases are not the facts of this case, they provide the framework for our decision here.

Consent judgments have attributes of both contracts and judicial decrees. *Chernick,* 327 Md. at 478, 610 A.2d 770. "A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Long,* 371 Md. at 82–83, 807 A.2d 1 (citing *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). The contractual aspects of a consent judgment are as important as the attributes associated with it being a judicial decree. The Court of Appeals has said "the consent judgment memorializes the agreement of the parties, pursuant to which they have relinquished the right to litigate the controversy in exchange for a certain outcome and/or, perhaps expedience." *Long,* 371 Md. at 83, 807 A.2d 1. The Court explains:

> It is the parties' agreement that defines the scope of the decree.... Where the agreement is embodied in the judgment without modification, construction of the judgment is construction of the agreement of the parties. Where, however, as here, the court has modified the agreement, we look to the agreement as submitted by the parties.

*Id.* at 83–84, 807 A.2d 1. This is equally applicable where the parties entered into an agreement in open court, which under Maryland law is binding upon the parties, *see Chertkof v. Weiskittel Co.,* 251 Md. 544, 550, 248 A.2d 373 (1968); *Wroten,* 35 Md.App. at 363, 370 A.2d 577, and the court, in reducing

the agreement to writing, has subsequently modified that agreement. The written agreement entered by the court will govern the rights of the parties should there be any dispute.

▇▇▇▇▇ In Maryland, the objective law of contracts is followed when interpreting the language of a contract. *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985). Therefore, when the language is clear and unambiguous "we must presume that the parties meant what they expressed," leaving no room for construction. *Id.* A court would be required to interpret the language in the written agreement, which may not necessarily be the same as the terms agreed to by the parties on the record. With the foregoing in mind we now turn to the agreement at hand.

Although the agreement between the parties covered nine pages in the record, appellant cites, in his brief, eight issues which were settled by the parties on the record that he claims were subsequently modified by the court's Order or omitted. We also recognize that some of the eight issues cited are now moot. We will examine only the issues cited that remain viable to determine if, in fact, the agreement, as entered by the court, reflects the parties' agreement on the record.

### 1. Attorney's Fees Clause

Appellant argues the parties never made any agreements regarding attorney's fees as part of the settlement agreement. We can find no reference to attorney's fees in our review of the portion of the record that contains the parties' agreement. The court's Order states: "If either party breaches this Consent Order, then the breaching party shall be responsible for Court Costs and Attorney's fees as determined by the Court."

▇▇▇▇▇ Maryland law clearly establishes that attorney's fees may not be recovered absent an express contractual provision, statutory authority, or the application of Md. Rule 1–341. *Moore v. Moore,* 144 Md.App. 288, 309, 797 A.2d 839 (2002), *rev'd on other grounds sub. nom Moore v. Jacobsen,* 373 Md. 185, 817 A.2d 212 (2003) (citing *Campitelli v. John-*

*ston,* 134 Md.App. 689, 699, 761 A.2d 369 (2000)); *see Lebac v. Lebac,* 109 Md.App. 396, 409, 675 A.2d 131 (1996). Certain sections of the Family Law Code allow a court to award attorney's fees. *See* Md.Code (2004 Repl.Vol.), Fam. Law (F.L.), § 7–101; Md.Code (2004 Repl.Vol.), Fam. Law (F.L.), § 11–110; Md.Code (2004 Repl.Vol.), Fam. Law (F.L.), § 12–103. In *Campitelli,* we determined that attorney's fees are not proper under Md.Code Ann., Fam. Law § 11–110 (2004) simply for the enforcement of a separation agreement. 134 Md.App. at 700–01, 761 A.2d 369. Attorney's fees may be awarded under Md. Rule 1–341, provided the court makes the proper findings, and the record must reflect the finding and basis. *Moore,* 144 Md.App. at 310, 797 A.2d 839.

 It is clear that attorney's fees were not part of the agreement on the record, and there is no statutory basis for an award. Although the trial court may have grounds to award attorney's fees in this case, there were no findings made or any basis established for the award of attorney's fees. The clause, awarding attorney's fees, was improperly included in the court's Order, and the Order should be revised to remove that provision.

### 2. The Bankruptcy Clause

Appellant claims that the court's Order expands the bankruptcy clause beyond the parties' agreement. Appellant specifically complains that the court's Order imposes obligations solely on appellant. Appellant also claims the court's Order makes all the financial matters in the agreement subject to the bankruptcy clause. He also claims the Order makes reference to "hold harmless agreements" and "debt agreements" that were never discussed, nor, he says, did the parties establish liability for attorney's fees in a bankruptcy proceeding.

The parties entered the following statement concerning bankruptcy into the record:

> And in that decree we are going to put language, which I will give to Mr. Rand to give to Mr. Smith which shows that these things by way of disorder [sic] are not dischargeable

in bankruptcy. Which means *that all the payments made are for spousal support and/or child support and therefore are not subject to.* (Emphasis added).

The court's Order states:

> ORDERED, that it is understood, mutually covenanted and mutually warranted that none of the financial duties and responsibilities of the parties to each other specified or referenced herein shall be dischargeable in bankruptcy as each party has given bona fide consideration and relinquished marital rights for same. The parties further specifically intend any hold harmless or debt agreements, and provisions regarding the payment of a monetary award, to be in the nature of the payment of alimony, maintenance or spousal support and therefore any such agreements shall not be dischargeable in bankruptcy. In the event a party to this agreement files for bankruptcy, the creditor spouse shall be entitled to attorney's fees and costs incurred in protecting his or her rights as provided by this agreement. All payments herein owed by the Plaintiff/Counter–Defendant to the Defendant/Counter–Plaintiff shall be considered for purposes of alimony, spousal support and/or child support and shall not be subject to any bankruptcy decree or not dischargeable in bankruptcy.

 Pellucidly, the parties agreed on the record that all monetary payments in the agreement are for spousal and child support, and they are not dischargeable in bankruptcy. The court's Order also imposes obligations on both parties under the bankruptcy clause, and as such we are not persuaded by appellant's arguments. We do conclude, however, that there was no agreement made by the parties to include language concerning "hold harmless agreements" or "debt agreements." It is also clear that the clause concerning attorney's fees was not part of the agreement. Therefore, the language concerning "hold harmless agreements," "debt agreements" and attorney's fees was improperly included and the Order should be revised to remove that language.

### 3. Child Support

Appellant asserts that the parties agreed to exchange tax returns biannually to determine what if any changes should be made to the amount of child support. As part of that agreement, he claims they agreed to extrapolate the child support guidelines for any income in excess of the guidelines. The record shows that the parties further agreed that if either is unhappy with the extrapolation, they had the right to have a court review the child support award.

The court's Order excludes the agreement between the parties to extrapolate the child support guidelines in making any adjustments. Therefore, the court's Order should be revised to include that agreement. We note that in no way does the parties' agreement to extrapolate the child support guidelines bind the court in making a determination as to the appropriate amount of child support to be awarded in a particular case.

### 4. Retirement Accounts

The record shows that the parties agreed that all retirement accounts are marital property and as such would be divided evenly between the parties. Specifically, the colloquy between the parties' counsel and the court went as follows:

> [Appellee's counsel]: ... We had mentioned to [Appellant's counsel], and he talked to his client, and we came back, we negotiated back and forth. We are in agreement that every dollar of every retirement account is marital property. It will be treated that way. We are in agreement that all the marital property retirement accounts, which is everything, there is no pre-marital at all anymore, will be divided equally. That is to say we intend to equalize it. Currently based upon our calculations, Mr. Smith has $494,269.79 in retirement accounts.

> [Appellant's counsel]: Correct.

> [Appellee's counsel]: [Appellee] has $66,288 in retirement accounts.

> [Appellant's counsel]: Correct.

\* \* \*

[Appellee's counsel]: ... Now we are giving [the Court] these figures even though these figures may not apply to the final QUADRO's [sic] that are done. Because we have agreed to equally divide them. *And if we divided them today, by way of example, [Appellee] would keep what she has. And [Appellant] would transfer to her $213,991 from his accounts. (Emphasis added.)*

[Appellant's counsel]: Correct.

\* \* \*

THE COURT: ... But, again, the theoretical agreement is that they divide these retirement accounts to the penny, equally.

[Appellant's counsel]: The holdings of the account, be it stock or money.

[Appellee's counsel]: Yes.

Appellee and appellant are both entitled to fifty percent of the total value of the retirement accounts. According to appellant, the court's Order requires him to pay appellee her fifty percent share from only one of the three retirement accounts, specifically the Schwab account, which appellant claims would have the effect of vesting more of the stocks and mutual funds with appellee than anticipated by the agreement.

The court's Order stated:

ORDERED, that the parties shall equally divide all of their retirement or deferred compensation amounts without regard to whether or not there is any portion of the interest which may have been considered non-marital. All retirement amounts are considered marital property.

The present value of the interest in the retirement accounts is as follows:

1. [Appellant]'s SEP/IRA account number 8272–0054 with Charles Schwab has an approximate value of $345,311.85 as of October 31, 2003.

2. [Appellant]'s SEP/IRA account number 9916362613 with Vanguard has an approximate value of $115,382.80 as of September 30, 2003.

3. [Appellant]'s SEP/IRA account number 902–00123423858 with Reich and Tang has an approximate value of $33,575.14 as of October 31, 2003.

4. [Appellee]'s pension with MCI WorldCom has an approximate value of $ 47,148.83 as of March 25, 2003.

5. [Appellee]'s 401–K plan with MCI has an approximate value of $19, 138.72 as of September 30, 2003.

The parties have estimated that the approximate current value of all retirement plans that each party has is $560,557.34.

All accounts shall be equally divided by way of QDRO's. However, the parties may agree on an alternate system of distribution and/or the division of the accounts, provide the values are equal. *Were the values to remain the same, the [Appellant] would transfer unto the [Appellee] $213,991.12 from his SEP/IRA Schwab account to an account for the [Appellee] by whatever Order is necessary to effectuate such a transfer.* Should the [Appellee] elect not to take the pension as a lump sum or be unable to take the pension as a lump sum, then the parties would enter into the appropriate Qualified Domestic Relations Order so that the [Appellant] would receive 50% of an if, as and when basis, in which event the amounts set forth herein for the transfer from the [Appellant]'s plan would be increased upward. It is the intention of the parties that the value of the plan be equalized so that each party has 50% of the total value. Both Parties agree that neither has borrowed any money or pledged the credit of these accounts and neither will borrow any money against the accounts. If any money is borrowed against the accounts by either party and/or the accounts are withdrawn by either party, then that party shall make up the difference in additional transfers. Neither party shall make any contribution to or withdrawals from the retirement accounts before the division and transfer is complete. The Court will continue to retain jurisdiction over this

portion of the Decree for purposes of creating the appropriate Qualified Domestic Relations Order; ... (*Emphasis added.*)

Appellant's apparent difficulty stems from the difference between the language of the example, explaining that $213,991 would be transferred from his accounts, delineated in the transcripts and the language of the example provided in the court's Order, stating that $213,991.12 would be transferred from his SEP/IRA Schwab account. We think the language complained of, by appellant, is nothing more than an example, of the division agreed to of the retirement accounts. The precise language of the transcript states "by way of example," when appellee's counsel referred to the amount to be disbursed. Additionally, in the court's Order, it states that "[a]ll accounts shall be equally divided by way of QDRO's." The court's Order also provides flexibility for the parties to choose whether to take a lump sum payment or enter into the appropriate QDRO's. We do not think that, in providing an example of the expected division, the court ordered appellant to pay to appellee her fifty-percent share out of only the Schwab account. The court's Order, most importantly, states that it is the parties intention that the plan be equalized to provide both parties with fifty-percent of the total value. That is precisely what the parties agreed to on the record. There is nothing in the court's Order contrary to the parties' agreement.

Clearly, the parties had an additional account, which they referred to as the joint Schwab account, account No. 3053–7765 with a balance of $361,359.58. The division of this account was not disputed by either party on this appeal.

### 5. Marital Home

According to the record, the marital home was sold prior to this appeal and the proceeds distributed. Thus, the issue is moot.

### 6. Country Club Membership

Appellant complains that the court's Order requires him to continue to be responsible for any charges incurred at

the country club, which was not a part of the parties' agreement. We can find no such language in the agreement; therefore, the court's Order should be revised to remove any language that requires appellant to continue to pay expenses related to the country club.

### 7. Income Tax Refunds

Appellant, in his brief, complains that the language requiring any refund check to be "presented to both parties for signing and the check should be provided to Defendant/Counter–Plaintiff's counsel, Samuel J. Brown, to be deposited in his escrow account" was not a part of the agreement. We agree that there is no language in the record regarding who will distribute the tax return refunds. Appellee, in her brief, however, states that all of the refund checks have been received and appropriately distributed by appellant.

We are not in a position to determine if, in fact, any refund checks have been distributed. The trial court is in a superior position to determine if all action with respect to the refund checks has occurred, rendering this issue moot. If the trial court determines the issue is not moot, then the court's Order must be revised removing the above language.

### 8. The Time Share

Finally, appellant claims the court's Order expands the parties' agreement with respect to selling the time share. In the event that one party wished to sell the time share, the parties agreed to sell it to the other party for half of the fair market value. The court's Order specifically states, "If they do not agree to sell the property, but one party wants to sell it after the two-year cycle, then the other party has to pay the other party one-half the fair market value or to match any reasonable offer presented for purchase of the timeshare." We agree with appellant that the agreement on the record only required the non selling party to pay half the fair market value. The language did not require the purchasing party to match any reasonable offers. Therefore, the court's Order must be revised to exclude this language from the agreement.

## CONCLUSION

The instant case presents a special circumstance. The parties entered into a valid consent settlement agreement on the record in open court, but refused to consent to the agreement as written. The court, after months of wrangling between the parties, entered an Order that modified the agreement of the parties as entered on the record. Upon our examination of the Order and the record, we have concluded that several provisions of the court's Order fails to accurately reflect the agreement of the parties entered on the record. Thus, the court's Order, as entered, modified the parties' agreement and altered the rights of the parties under the agreement.

A consent decree implies that the parties have consented to the agreement. In this case, it was clear to both the parties and the court that there was no consent to the terms of the written agreement. Therefore, we hold it was an abuse of discretion for the trial court to enter the Order of Court Reflecting the Agreement of the parties, and we remand this case to the trial court to revise the agreement of the parties, tracking the terms and language of the agreement as it appears in the record of the proceedings on November 25, 2003, in the Circuit Court for Anne Arundel County. Because we have determined the trial court abused its discretion in entering the Order, it is not necessary to address appellant's second question.

**CASE IS REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY TO REVISE THE ORDER OF COURT REFLECTING THE PARTIES' AGREEMENT CONSISTENT WITH THIS OPINION.**

**COST TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.**