943 A.2d 677

**Cadman Atta MILLS**

v.

**Maimouna MILLS.**

No. 2002, Sept. Term, 2006.

Court of Special Appeals of Maryland.

March 5, 2008.

Scott M. Strickler (Dinah L. Choi, Strickler, Sachitano & Hatfield, PA on the brief), Bethesda, for Appellant.

Dorothy R. Fait (Majorie G. DiLima, Fait & Wise, LLP on the brief), Rockville, for Appellee.

Panel: DAVIS, BARBERA, PAUL E. ALPERT, (retired, specially assigned), JJ.

DAVIS, Judge.

Appellant, Cadman Mills, appeals from an Amended Order entered by the Circuit Court for Montgomery County (Scrivener, J.) on October 25, 2006 and the denial, on December 4, 2006, of appellant's Motion to Vacate. This appeal arises out of an Amended Order regarding appellant's retirement benefits with The World Bank. Appellant and appellee, Maimouna Mills, entered into a settlement agreement during their divorce proceeding on August 10, 2004 and placed the terms of their agreement on the record before the Circuit Court for Montgomery County (Ryan, J. presiding). The parties agreed, *inter alia,* to divide equally their "two retirement accounts." The parties further agreed that counsel would prepare appropriate Qualified Domestic Relations Orders (QDRO) to divide the accounts. On August 16, 2004, a written Judgment of Absolute Divorce was entered. The terms of the parties' settlement agreement were incorporated but not merged into the Judgment of Absolute Divorce. The judgment also reserved jurisdiction to modify any qualified pension order(s) necessary to carry out the terms of the parties agreement.

After appellant opposed appellee's Motion For Enforcement of Judgment of Absolute Divorce and For Appropriate Relief (First Motion) on the basis that appellee had failed to provide information regarding her retirement assets, the court entered an Order (Original Order) submitted by appellee.

Appellant again opposed appellee's Second Motion for Enforcement of Judgment of Absolute Divorce and For Appropriate Relief (Second Motion), maintaining that the Plan Administrator from The World Bank notified her that the submitted Original Order needed to be amended in order to be accepted as a QDRO by The World Bank. After a hearing was held, the Circuit Court for Montgomery County entered an Amended Order over appellant's objections.

Appellant filed his Notice of Appeal from the Amended Order on October 25, 2006. Contemporaneously on that day, appellee received documentation that The World Bank was

prepared to honor the Original Order. Subsequently, appellant filed a Motion to Vacate the Amended Order, which was later denied on December 4, 2006. On December 13, 2006, appellant filed his Notice of Appeal from the denial of the Motion to Vacate. We have consolidated the two appeals to address the following issues, which we have rephrased as follows: [1]

1. Did the trial court err when it exercised its revisory power to enter the Amended Order?

2. Did the trial court err when it denied appellant's Motion to Vacate the Amended Order?

We answer both questions presented in the negative and, accordingly, affirm the judgment of the trial judge.

## FACTUAL BACKGROUND

Appellant and appellee married on December 28, 1985, in Dakar, Senegal. One child, Sara Mills, was born of the union on September 4, 1989. Appellant filed a divorce action in the Circuit Court for Montgomery County on May 22, 2003. Appellee filed her counterclaim on November 20, 2003. On August 10, 2004, the parties appeared in the circuit court for trial. Prior thereto, they reached a settlement agreement and placed the terms of the agreement on the record. The parties agreed to split appellant's "retirement account with the World Bank" and appellee's "[t]hrift savings account so that each party has 50 percent." It was agreed that counsel would prepare the appropriate QDROs to divide the account. On

---

1. The issues on appeal, as framed by appellant, are:
 1. Did the trial court err when it exercised its revisory power under Maryland Rule 2–535 and entered an Amended Order regarding retirement benefits on September 26, 2006, more than thirty days after the original Order was entered on September 29, 2005 and in the absence of any showing of fraud, mistake or irregularity?
 2. Where the trial court improperly exercised its jurisdiction to revise the original Order, and in a manner not authorized by law and there was no legal or factual basis for the Amended Order, did the court err as a matter of law when it denied [appellant's] Motion to Vacate the Amended Order?

August 16, 2004, a Judgment of Absolute Divorce granting the divorce and incorporating the parties' settlement agreement was entered. The Judgment also reserved "jurisdiction to receive, enter, alter, amend and/or modify any qualified pension order(s) which may be necessary to carry out the terms and provisions of the parties* agreement."

Following the entry of judgment, appellee drafted an order for the division of appellant's pension benefits with The World Bank. Appellant, however, refused to sign the order. Subsequently, appellee filed her First Motion on February 15, 2005, along with the proposed order. Appellant responded in his First Opposition that appellee was also a participant in a defined benefit plan in addition to her thrift savings account. A hearing was held and, on September 15, 2005, the court denied appellant's request to share in appellee's defined benefit retirement pursuant to Md. Rule 2–535 and explained that appellant had only thirty days after the entry of a judgment to seek its modification.

On September 21, 2005, another motions hearing was held. The parties made one modification of the previously submitted, but un-executed order. The parties agreed to change appellee's share in appellant's pension from fifty percent to forty-one percent. The agreement was then placed on the record and, on September 29, 2005, the court entered the Original Order which

> retain[ed] continuing jurisdiction over the parties to this proceeding and continuing jurisdiction (i) to modify this Order as necessary to insure that it is an order acceptable by the Plan; (ii) to settle any and all disputes between the parties relative to the benefits provided in this Order; and (iii) to enter such orders *nunc pro tunc* as may be required to carry out the intention of the parties as expressed herein and in the aforesaid agreement of the parties.

Approximately one month after the Original Order was entered on November 30, 2005, Alan Siff, legal counsel for the Pension Administrator for The World Bank Retirement Plan, sent an e-mail to appellee's counsel stating that "there are a

number of open questions presented by the [Original] Order." The Original Order was not rejected by the Plan Administrator; instead, questions were posed in an attempt to clarify the Original Order. Subsequently, appellee's attorneys drafted an Amended Order and submitted a copy to Siff to ascertain whether the language of the Amended Order was clear and acceptable to the Plan Administrator. Upon Siff's review, appellee submitted a comparison copy of the Amended Order and the Original Order to the court on April 5, 2006, along with her Second Motion that related the following:

On the 30th day of November, 2005, the Plan Administrator from the World Bank notified [appellee's counsel] that the submitted Pension Order needed to be amended in order to be accepted as a QDRO by the World Bank.

Appellant responded by filing an Amended Opposition to appellee's Second Motion, asserting that the Amended Order included terms and provisions not agreed to by the parties in August of 2004 and that it exceeded the scope of the Original Order. Appellant attached to his Amended Opposition a document from The World Bank, which provided, "The normal QUADRO rules under U.S. law do not apply."

Pursuant to a hearing held on September 1, 2006, the circuit court, in an oral opinion, granted appellee's Second Motion. On September 26, 2006, the court entered the Amended Order and appellant filed a Motion to Vacate.

Four days after the Amended Order was entered, on September 30, 2006, appellant retired from The World Bank after electing to commute one-third of his pension and failing to elect the lump sum survivor benefit on behalf of appellee. His employer at the time had not received notice of the entry of the Amended Order.

Prior to The World Bank's receipt of the Amended Order, the Pension Administration Division sent correspondence dated October 4, 2006 to appellee, notifying her of appellant's retirement and informing her of her monthly payments from appellant's pension pursuant to the Original Order and not the Amended Order. The letter provides, in pertinent part:

The purpose of this letter is to inform you that [appellant] retired from The World Bank on September 30, 2006. In accordance with the Court Order issued by the Circuit Court for Montgomery County, Maryland on September 29, 2005, spousal support of 41% of [appellant's] monthly benefit is payable directly to you from the World Bank Staff Retirement Plan (the Plan). The monthly payment, to the extent authorized, became effective October 1, 2006 and is due at the end of each month.

On October 24, 2006, appellee filed a Motion for the Enforcement of Amended Order, Specific Performance and Other Relief claiming that appellant failed to satisfy his obligations to appellee under the Amended Order and to make the proper elections for his pension benefits when he retired. Appellant filed his Response to the Motion, but before appellee's Motion for the Enforcement of Amended Order was ruled upon, appellant remarried. As a result, the court found that appellee's Motion regarding survivor benefits was moot leaving only the issue of commutation pay disputed.[2]

On December 4, 2006, appellant's Motion to Vacate was denied.

## STANDARD OF REVIEW

We review the findings of a case tried without a jury "on both the law and the evidence." Md. Rule 8–131(c). We will not overturn the judgment of the trial court on the evidence absent clearly erroneous fact finding and "will give due regard to the trial court's opportunity to judge the credibility of the witnesses." *Id.* We limit our task to a determination of whether substantial evidence exists in the record to support the trial court's finding. *L.W. Wolfe Enters., Inc. v. Md. Nat'l Golf,* 165 Md.App. 339, 343, 885 A.2d 826 (2005). Thus, we must "consider evidence produced at the

---

**2.** Given that both parties agree that the only issue regarding the Amended Order that remains in dispute is that of commutation pay, we will address only whether there was an agreement between the parties to share or divide commutation pay.

trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed." *Id.* (citations omitted). Furthermore, it must be determined that the trial court's conclusions were based on sound legal principles and factual findings. We must conclude that the trial court abused its discretion. *Elza v. Elza,* 300 Md. 51, 56, 475 A.2d 1180 (1984). Therefore, we shall review the legal questions presented at bar using the clearly erroneous standard of review.

## LEGAL ANALYSIS

■ Appellant initially contends that the circuit court*s entry of the Amended Order was an improper exercise of its jurisdiction under the Judgment for Absolute Divorce and the Original Order. He asserts that the trial court's error is twofold, claiming that there was no justifiable basis for the trial court's entry of the Amended Order and that the Amended Order fails to accurately reflect the terms of the parties' settlement agreement regarding retirement benefits. Appellee responds that the trial court had jurisdiction to amend the Original Order because the court expressly reserved jurisdiction to do so and the Amended Order accurately reflects the intent of the parties. We agree with appellee and will begin our discussion with consideration of the trial court's jurisdiction to enter the Amended Order.

Approximately one month after the Original Order was entered, Siff, legal counsel for the Pension Administrator for The World Bank Retirement Plan, sent an e-mail to appellee's counsel stating that "there are a number of open questions presented by the [Original] Order." Siff expressed concerns, most notably that the Original Order did not address what happens if appellant were to elect to commute up to a third of his pension as permitted by the Plan. Consequently, appellee filed her Second Motion. As noted, in it, she asserted that the Plan Administrator from The World Bank had notified appellee's counsel on November 30, 2005, "that the submitted

Pension Order needed to be amended in order to be accepted as a QDRO by [T]he World Bank."

The correspondence, however, did not state that the Original Order must be amended in order to be accepted as a QDRO by The World Bank, but instead pointed out that it left open a number of questions. Moreover, The World Bank Staff Retirement Plan materials expressly provide that the "normal QUADRO rules under U.S. law do not apply." Despite these facts, it was not unreasonable for appellee to make the requested clarifications via minor amendments to the Original Order thereby assisting with the efficient enforcement of the Order. During the motions hearing regarding the proposed Amended Order, appellee's counsel stated, "All I'm trying to do is get some technical amendments added to the original pension order, for ease of enforcement by the World Bank. That's all I'm trying to do."

In *Rohrbeck v. Rohrbeck*, 318 Md. 28, 566 A.2d 767 (1989), the Court of Appeals recognized the use of appropriate pension orders as an enforcement tool. The Court held that "we therefore expressly recognize the ability of a party otherwise entitled to a QDRO to obtain one as an aid to enforcing a previously entered judgment." *Id.* at 43, 566 A.2d 767. The Court's holding supports the proposition that a pension order may be entered after the underlying judgment if a pension order is being used as an enforcement tool and not as collateral to a judgment. *Id.*

It became necessary for appellee to remedy the number of open questions presented by the Original Order and to enforce the parties' agreement that appellee would receive forty-one percent of appellant's pension. If appellant were to elect—as he did ultimately—to commute one-third of his pension amount, appellee's monthly pension benefit would be significantly reduced. Consequently, the trial court properly relied on its reservation of jurisdiction to amend the Original Order to ensure that the intent of the parties and the Judgment of Absolute Divorce was enforced.

Thus, relying on its reservation of jurisdiction as set forth in the Original Order, rather than Md. Rule 2–535,[3] the trial court had

> continuing jurisdiction over the parties to this proceeding and continuing jurisdiction (i) to modify this Order as necessary to insure that it is an order acceptable by the Plan; (ii) to settle any and all disputes between the parties relative to the benefits provided in this Order; and (iii) to enter such orders *nunc pro tunc* as may be required to carry out the intention of the parties as expressed herein and in the aforesaid agreement of the parties.

The trial court retained jurisdiction to settle any and all disputes between the parties relative to the benefits provided in the Original Order. Given Siff's e-mail and appellant's imminent retirement, there was a dispute between the parties relative to the receipt by appellee of a reduced amount of pension benefits that had the consequential effect of contradicting the intent of the parties.

Appellant, however, focuses his argument on the fact that it was not necessary to modify the Original Order "to insure that it was an order acceptable by the plan." He relies heavily on the letter dated October 4, 2006, in which Krishnan Nagarajan, a Pension Benefits Administrator of The World Bank, notified appellee that, in accordance with the Original Order, the World Bank would directly award her forty-one percent of appellant's monthly benefits. Appellant contends that, because The World Bank planned to honor and comply with the Original Order, the trial court had no justifiable basis to enter the Amended Order. The October 4th letter, however, honoring the Original Order, was received after the September 1, 2006 hearing on the amendments and Siff's e-mail listing questions and pointing out ambiguities of the Original Order. On the other hand, appellant also asserts that "[t]he normal

---

**3.** In appellant's initial brief, he asserted that no such reservation existed because the page containing the reservation of jurisdiction was missing from a copy of his Original Order. Due to the fact that the court reserved jurisdiction, we do not need to discuss the court's revisory power under 2–535.

QUADRO rules under U.S. law do not apply" to The World Bank pensions. Despite this fact, the trial court still retained jurisdiction "to settle any and all disputes between the parties" arising after Mr. Siff's e-mail. Moreover, clarification of the Original Order was needed to effectuate the efficient enforcement of the parties' intent.

 Appellant further advances the argument that, if the trial court retained jurisdiction over the Original Order, the court erred by failing to require full disclosure from appellee regarding her second retirement plan. Appellant refers to this Court's decision in *Eller v. Bolton*, 168 Md.App. 96, 895 A.2d 382 (2006), in which we relied upon the holding of the U.S. Court of Appeals for the Tenth Circuit in *Patton v. Denver Post Corp.*, 326 F.3d 1148 (10th Cir.2003); it concluded that a domestic relations order entered *nunc pro tunc* to cure an omission of relevant information is proper. In *Patton*, the parties made financial disclosures during their divorce proceedings, but when the husband inquired into his pension benefits with his employer, the employer disclosed the husband's participation in one pension plan, but inadvertently failed to disclose the existence of a second plan. *Id.* at 1150. After the husband's death, the former spouse became eligible for survivor benefits. She inquired as to why the amount of her payments were so low in light of the years of service her former spouse had provided to the employer. A subsequent investigation revealed that a second plan had not been disclosed at the time of the divorce proceedings. *Id.* The court entered an order *nunc pro tunc*, effective as of the date of the parties' divorce, granting the former spouse one-half interest in her former husband's second retirement plan. *Id.* at 1152.

*Patton* and the case *sub judice* are distinguishable. At the outset, we have previously explained that an order entered *nunc pro tunc* is an "entry now of something actually previously done to have effect of former date; office being not to supply omitted action, but to supply omission in record of action really had but omitted through inadvertence or mistake." *Eller*, 168 Md.App. at 129, 895 A.2d 382 (citing *Short v.*

*Short,* 136 Md.App. 570, 578, 766 A.2d 651 (2001)). In *Patton,* the court found that the parties intended a fifty percent division of his pension. Although the second plan was part of his pension, he had inadvertently neglected to disclose it. By contrast, appellant and appellee agreed to split appellant's "retirement account with the World Bank" and appellee's "[t]hrift savings account . . . so that each party has 50 percent." Thus, the court in *Patton* supplied "an omission in record of action really had but omitted through inadvertence," compared to the case *sub judice* where the court correctly ruled that it would not supply the omitted action. *See also Eller,* 168 Md.App. at 132, 895 A.2d 382 (holding that, "due to inadvertent drafting mistakes, the original QDRO failed to secure Wife's interest in Husband's pension as intended by the parties"). Moreover, at the September 15, 2005 hearing, the court ruled that, pursuant to Md. Rule 2–535, appellant had only thirty days after the entry of a judgment to seek modification of the Order. Consequently, appellant was barred from claiming rights to appellee's defined pension plan.

Appellant next contends that the Amended Order contains significant revisions from the Original Order and, therefore, fails to accurately reflect the terms of the parties' settlement agreement. It is settled that, while a trial court is not prohibited from amending orders to effectuate the intent of the parties, consistent with the terms of the settlement agreement, the court is not permitted to change the terms of an agreement reached by the parties. *Long v. State,* 371 Md. 72, 89, 807 A.2d 1 (2002) (holding that it was error for the court to enter a modified agreement which materially altered the agreement reached by the parties).

This Court recently applied the foregoing principles in *Smith v. Luber,* addressing the impropriety of the entry of a court order in a divorce case. 165 Md.App. 458, 885 A.2d 894. In *Smith,* we held that, while the husband and wife entered into a valid consent settlement agreement on the record, the language of the order was not reflective of the parties' agreement. *Id.* at 471–73, 885 A.2d 894 (The inclusion of a clause

awarding attorney fees and a "bankruptcy clause" concerning "hold harmless agreements," "debt agreements," and attorney fees in a bankruptcy proceeding modified the parties' agreement so as not to accurately reflect the intent of the parties.). We held that the court abused its discretion because several provisions of the court's Order failed to accurately reflect the agreement of the parties entered on the record. *Id.* at 479, 885 A.2d 894. While appellant insists *Smith* and the case *sub judice* are analogous, the two are factually different. After a careful examination of the Comparison Copy for the Original Order and the Amended Order, only minor amendments that did not improperly modify the parties' agreement nor alter the rights of the parties under the agreement were enforced by the court.

As agreed by both appellant and appellee, the only amendment that remains in dispute is the added provision "that in the event at retirement Participant elects a commuted pension amount, the Former Spouse shall also receive Forty-one percent (41%) of Participant's commuted benefit when payable under the terms of the Plan." While the parties never specifically referred to commutation pay in their agreement on the record, the parties did intend for appellee to receive forty-one percent of appellant's pension benefit amount. The provision of the Original Order which was actually read into the record in the presence of both parties declared "that from the monthly benefit that [appellant] is not receiving or may hereafter receive or become entitled to receive from the Plan, an amount shall be payable for the support of the [appellee] which shall be Forty One Percent (41 %) of the amount payable to the Participant from the Plan." Thus, it follows that when appellant chose to commute one-third of his benefit amount, appellee should receive forty-one percent as originally agreed and contemplated.

Furthermore, during the September 21, 2005 hearing, the Domestic Relations Master referred the case of *Dexter v. Dexter*, 105 Md.App. 678, 661 A.2d 171 (1995) to appellant, informing him that "the holding of that case is basically that a party who is a participant in the pension, where it is going to

be divided by the court, cannot do anything to reduce the value or the amount of that pension." While *Dexter* does not address the issue presented in the case *sub judice*, the discussion during the hearing illustrates that, if appellant took something called a "severance payment" or "separation payment" [4] or "whether [he calls] it anything the operative words are 'which would reduce the amount of the pension,'" he was informed that he could not take any action to reduce appellee's interest in his pension.

The Amended Order clarifies, enforces and protects appellee's interests as stated in the Original Order if appellant's actions resulted in a financial loss to appellant with the following provision:

"[Appellant] will indemnify and hold [appellee] harmless from and against, and will reimburse the [appellee] with respect to any loss, cost, or expense, which the [appellee] may sustain or incur, including reasonable attorney's fees: (i) as a result of any violation by the [appellant] of the terms of this Order; (ii) by reason of any act or omission of the [appellant] (regardless of whether such act is intentional, negligent, or inadvertent) which results in any financial loss to the [appellant] in connection with the portion of the [appellant's] retirement annuity that is payable for the support of the [appellee] as set forth below.

Any commutation pay that appellant receives reduces the amount of retirement annuity that is payable to appellee. Pursuant to Siff's request for clarification, most notably upon learning of appellant's option to commute one-third of his

---

**4.** There is a disagreement in the record whether "severance" or "separation pay" is actually referring to commutation pay. This variance is immaterial to the issue because the quoting of *Dexter* at the September 21, 2005 hearing was to stand for the proposition that appellant could not take an action to reduce his pension. While appellant's counsel argued that commutation pay is different at the September 1, 2006 hearing, the court found that, because appellant had an option to take a lower pension after taking a lump sum up front, the amended provision would "give [appellee] a percentage, basically, if, as, and when and whatever it is he gets then, right?" thus enforcing the parties' intention that appellee receive forty-one percent of appellant's pension benefits.

pension, coupled with the discovery of appellant's imminent retirement, the Amended Order was drafted to address these issues and to clarify the aforementioned indemnification provision. Accordingly, the Amended Order served to clarify that portion of the Original Order to specifically provide that any commutation pay would be distributed in the same manner as the pension annuity so that appellee would not suffer a loss necessitating the action to sue appellant in the circuit court for indemnification and reimbursement.

During the motion hearing, appellant continued to press his position that commutation pay was not discussed during the parties' settlement agreement. After hearing appellant's argument regarding the provision on commutation pay, the trial court properly concluded that "it's accurate to amend the order to say that, if he has the option of doing that because, all that's doing is giving her the marital share of whatever it is he gets." We agree.

Upon our examination of the Original Order, Amended Order and the record, the provision on commutation pay, in our view, accurately reflects the agreement of the parties entered onto the record. The trial court's findings of fact in the case *sub judice* are supported by the record and, thus, the court did not err or abuse its discretion when applying the law to the facts.

## II

Appellant next contends that, because there was no justifiable basis for the entry of the Amended Order and the terms of the Amended Order fail to accurately reflect the terms of the parties' settlement agreement, the trial court abused its discretion in denying his Motion to Vacate. As we have discussed *supra*, there was a justifiable basis for the entry of the Amended Order and the terms of the Amended Order do accurately reflect the intent of the parties. *See supra* I; *Long v. State*, 371 Md. 72, 89, 807 A.2d 1 (2002).

Furthermore, appellant has failed to set forth any argument in support of the proposition that the trial court is precluded

from issuing the Amended Order after the October 4, 2006 letter notified appellee that The World Bank planned to honor the Original Order. Moreover, the Plan Administrator accepted the Amended Order after the acceptance of the Original Order. Thus, the trial court, having retained its jurisdiction, had the authority to amend the Original Order to effectuate the intent of the parties and to assist with the enforcement of their settlement agreement. The trial court properly denied appellant's Motion to Vacate.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**